PSAKI BROS. *v.* UNITED STATES (No. 937).[1]

1. TEN-DAY LIMIT FOR FILING PROTEST.

When the ten-day limit fixed by the customs administrative act for filing a protest expires on Sunday, it is not a seasonable compliance with the requirement when the protest is filed on the Monday ensuing.—Shefer *v.* Magone (47 Fed., 872). Monroe Cattle Co. *v.* Becker (147 U. S., 47) distinguished.

2. IBID.

Nor is it a compliance with the requirement if the protest should be mailed at 4.30 p. m. on Saturday preceding the Sunday of expiration. The office of the collector was closed to public business at that hour, and the protest, having reached the collector's office at a later hour, came too late.

United States Court of Customs Appeals, January 20, 1913.

APPEAL from Board of United States General Appraisers, Abstract 28892 (T. D. 32645).

[Affirmed.]

*Hatch & Clute* (*Walter F. Welch* of counsel) for appellants.
*William L. Wemple*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The entry in this case was liquidated on the 16th day of January, 1908. The tenth day thereafter fell upon Sunday. An envelope

---

[1] Reported in T. D. 33122 (24 Treas. Dec., 93).

inclosing the protest and a letter on behalf of protestants, in which letter it was stated that "we find the protest desk at the customhouse closed at this time on Saturday afternoon, and are accordingly mailing the protest to you," was addressed to the collector and sent to him by special delivery, and was deposited in the mail at 4.30 p. m. of Saturday. It was received at the customhouse by a watchman then on duty at 6.48 p. m. Saturday and found its way into the correspondence room of the customhouse, where it was opened by the proper officer and stamped "Received, January 27, 10.17 a. m., 1908. correspondence room, N. Y. customhouse." In receiving this letter the watchman followed a long-established custom of receiving letters after the customhouse closed. When so received the custom was to leave the letters on a window sill or desk and the following morning to turn them over to some one else, whose custom or duty presumably was to deliver the same to the persons to whom they were addressed or their representatives. While the record is silent in this respect, we assume such was the procedure in this case, and in this manner the letter came to the proper desk Monday morning and was then stamped as above stated.

Section 14 of the customs administrative act of June 10, 1890, then in force, provides in relation to protests that the protestant "shall within ten days * * * give notice in writing to the collector" of the material and essential facts necessary to constitute a legal protest, and the question in this case is, Was this notice seasonably given?

The facts stated readily suggest that the determination of the issue involves two considerations:

(1) When the tenth day provided for giving such notice falls upon Sunday may the notice be given on the next secular day?

(2) If not, was the protest in this case filed with the collector in contemplation of law on Saturday, for it is tacitly agreed that such notice could not be effective if given to or lodged with him on Sunday.

As to the first point, a reargument of this case was ordered by the court *sua sponte*.

Upon the question of whether, when the last of a certain number of days allowed by statute for the doing of some act falls upon Sunday, the act may nevertheless be performed on the following secular day, there is a great wealth of authorities and much difficulty in reconciling the same. We have not undertaken to do this so far as the decisions of State courts are concerned.

One of the earliest applicable cases to which our attention has been called in the Federal courts is Shefer *v.* Magone (47 Fed., 872), decided in the Circuit Court for the Southern District of New York in 1891. Judge Lacombe in his oral opinion, as reported in that case, said in substance that inasmuch as there was no statute extending

the time within which the protest might be filed, provided the last day of the statutory period for the filing fell upon Sunday, it was settled by the weight of authority that the protest could not be served on the following Monday, and it appears that the authorities were somewhat reviewed by the learned judge in giving his opinion.

The Shefer case, *supra,* seems to have been followed in Hermann *v.* United States (66 Fed., 721), decided in the same Circuit Court in 1895, in which case Judge Coxe gave an oral opinion, although the question involved was not that of protest, but related to the giving of an order to the importer by the collector for the return of goods to the public stores. It was held that when the last of 10 days within which such order might be given expired on Sunday the order could not be given on the next secular day, and it was said that the precise point was determined in the Shefer case.

The Board of General Appraisers appear to have uniformly followed and adhered to this view of the law. See *In re* Pollman (T. D. 16723), decided in 1895; Mowat's case (T. D. 21628), decided in 1899; and Bolognesi's case (T. D. 26414), decided in 1905.

These authorities afford convincing evidence that the precise question before us, whenever it has been before the courts or other tribunals, has been uniformly decided contrary to the appellants' contention. The fact that the question has been litigated demonstrates that the administrative officers having charge of the enforcement of the customs laws have uniformly contended for the same interpretation as they claim here. That such has actually been the departmental construction of the statute is clearly shown by a reference to the rulings in T. D. 3139 (1877); T. D. 7858 (1886); and the Customs Regulations—1884, article 363; 1892, article 938; 1899, article 1460; 1908, article 1069.

Not only this, but in Johnson *v.* Myers (54 Fed., 417), decided in the Eighth Circuit Court of Appeals in 1893, and in Myers *v.* Hot Springs Co. (169 Fed., 628), decided in the Ninth Circuit Court of Appeals in 1909, involving motions to dismiss appeals upon the ground that the same were not taken within six months, it was held upon a somewhat careful review of the authorities, that when the last day of the six months fell upon Sunday the appeals must be taken the preceding day. In substance, the law was said to be that, when the statute prescribed a limited time for the doing of an act, the courts were without power to extend the time so fixed, where in a given case the last day of the prescribed time happened to fall on Sunday.

In the latter of these two cases, the Shefer and Johnson decisions, *supra,* were cited in support of the court's conclusion.

It must be admitted that such a uniform departmental practice in that regard and a consistent construction of the statutes by the

courts for the length of time shown are of great weight in determining the question before us; and especially is this so when it is considered that since Judge Lacombe's decision at least two important tariff acts have been placed upon the statute books with no suggestion therein that the Congress intended to correct an erroneous construction or interpretation thereof, which it was charged with knowledge had obtained, or to extend the time of filing the protest when the last day of the time fixed therefor by the statute fell on Sunday.

The case of the Monroe Cattle Co. v. Becker (147 U. S., 47) is relied upon by the appellants as an authority for the right to file this protest on Monday following the expiration of the 10 days' limit.

This case arose under the laws of Texas, wherein, in substance, it was provided that an applicant for the purchase of certain public lands must make his first payment therefor within 90 days from the date of his application; that if he failed in this respect the land should be again treated as for sale by the proper State officer, who was authorized to receive new applications for its purchase; and that another application to purchase should not be entertained until the said official authorized to receive it had been notified of the forfeiture on the pending application.

The cited case shows that an application to purchase certain of these lands was properly made August 28, 1882, by one Rhomberg, as agent for other parties; that the ninetieth day within which the first payment was required expired on Sunday, November 26; that the applicant did not make his payment within the 90 days, but as agent for certain other parties filed another application for the same lands on the 25th day of November, 1882; that before any further action was taken on the last application, and on January 2 and 8, 1883, one Jacobs and Fisher filed applications to purchase the same lands covered by Rhomberg's application; that conformably to the Texas statute the necessary proceedings under these January applications were had, all within less than 90 days from November 25; that within less than 90 days from November 25 the applications made by said Rhomberg were duly proceeded with on the part of the applicant; that the State officials refused to accept the payments thereunder on the ground that the proceedings under the applications of Jacobs and Fisher of January 2 and 8, above mentioned, were pending; that Rhomberg continued to press his claims and later made payments which were accepted by the State officials, and letters patent in the name of the applicants for whom he acted were issued for the lands. Jacobs and Fisher conveyed their interest in the lands covered by their applications, and their grantee entered into possession of the lands described therein. The persons for whom Rhomberg was acting in making his last application and

who had received their letters patent for the lands, conveyed the same, and their grantee brought an action of ejectment against the grantee of said Jacobs and Fisher to obtain possession of the lands, and the cited case was a bill in equity by the last-mentioned grantee to restrain the prosecution of such ejectment suit.

It was claimed by the defendant in the equity proceeding that said Rhomberg had a right before the expiration of said 90 days to withdraw and abandon said pending applications of August 28 and to make others, but the Supreme Court found there was no record of such an abandonment; that it could only be presumed from the fact of the new application of November 25, concerning which there was nothing to distinguish it from prior applications. In its discussion of the case the court seems to have denied the right to abandon in this manner or at least asserted that the presumption of abandonment of the pending application could not be founded upon the application of November 25, as claimed by the defendant, and said:

As the ninetieth day fell on Sunday, the lands were not open to another application until Monday, the general rule being that, when an act is to be performed within a certain number of days, and the last day falls on Sunday, the person charged with the performance of the act has the following day to comply with his obligation

The court further said in substance that to permit an applicant to abandon his application any time within the 90 days and file another application without notice of abandonment of the first one would enable him by a single change of name of the person he represented to keep the lands out of the market for an indefinite period and would defeat the very object of the legislature, which was to fix a time within which no other application for the land should be entertained.

The Circuit Court had entered a decree dismissing the bill, which decree the Supreme Court reversed.

The court in its opinion does not enter into any considerable discussion of the question, but cites Endlich on Statutes (1888) in support of what the opinion holds to be the general rule, but no reference is made to customs laws or the construction to be given to the same as touching the question now before this court.

Many authorities hold that for the purpose of performing a contractual obligation, when the last of a certain number of days falls on Sunday, the act may be done the next day. The Supreme Court does not in the cited case say whether it treats the obligation of payment to be made by the applicant under the circumstances above stated as like that arising out of a contractual obligation or not, and dismisses the Sunday question with the language we have quoted.

Lewis's Sutherland Statutory Construction (1904), section 188, after a somewhat exhaustive examination of authorities, states that "in the absence of a positive written law excluding Sundays from a period of days prescribed for any purpose they are counted even

though the period ends on Sunday," and cites many authorities both American and English in support of the rule. The author, however, recognizes that it has been held that there are exceptions to this rule, as when the prescribed period is less than a week, or where the period is fixed by contract, or is a rule of court regulating practice, in which cases it is held a final Sunday is not included in the computation of time, and also that these exceptions to the rule seem to be qualified by the limitation that the days of grace allowed by the law merchant expire on Saturday, if the last of such days falls upon Sunday.

Upon the whole, we do not think that the Monroe Cattle Co. case is a controlling authority in support of the contention that the protest here might be filed on Monday even if we were to give no force to the contrary adjudications or administrative practice. The Supreme Court did not have before it any question of the construction of Federal statutes in general or customs laws in particular. It was seeking to give effect to what it declared was the manifest intent of the Texas statute and its attention does not appear to have been called to the long established departmental construction or to the judicial interpretation of the statute now before us, both of which it has often declared are strongly persuasive upon it of the construction to be given to ambiguous statutes.

We think the protest in this case can not, by reason of its filing on Monday, be held to be seasonable, and therefore pass to the consideration of the second point.

While the statute requires notice to be given to the collector, it is quite apparent that unless there is a statutory provision or Treasury regulation that it shall be given to no one else it would be competent for the collector to delegate to some one the authority to receive protests in his place. It is obvious from the amount of business to be transacted by the collector that this right must attach to that office, and we so assume. See Schell's Executors v. Fauche (138 U. S., 562).

In this case, however, no delegation of such an authority by the collector to the watchman to receive protests is shown. The most that can be presumed from the facts stated is an implied authority on the part of the watchman to receive mail sent to the customhouse after hours and in due course to turn it over to some one for delivery to the addressees, and the delivery to them or their representatives would be required, so far as the issues in this case are concerned, to enable the mail so delivered to perform its function. Delivery to the watchman under the circumstances shown here was not delivery to the collector or his authorized representative within the 10 days allowed for filing protests, because it did not reach either within that time.

By adopting the method they did of giving notice to the collector we think the importers took the chance of its reaching him or his authorized representative on Saturday, and that it did reach either on that day can not be presumed, especially when, as we have seen, the fact is otherwise.

It is not claimed, and we know of no authority which holds or statute which declares, that the depositing a protest in the mail within the 10 days, duly addressed to the collector, is a filing the same with him within that time. It may seasonably reach him or it may not, and the burden is on the importer to show that it does. Such seems to have been the ruling of the Board of General Appraisers (T. D. 13204 and T. D. 13367), and we think it is sound law. Had Congress intended the mere mailing of a protest to be a sufficient and timely service thereof it would undoubtedly have so provided.

The case is argued on the part of both parties here upon the assumption that the customhouse was not open Saturday afternoon except for the reception of protests, and for that purpose only was open until 3 o'clock and not later, but the record is silent on the question. It is said by the Government that under the laws of New York State Saturday afternoon is a legal holiday in New York City and by the appellants that there is no law authorizing the closing of the customhouse on Saturday afternoon. We assume, for the purposes of this case, because the Government in effect so concedes, that no protest would be received at the customhouse after 3 o'clock.

But so far as this case is concerned it does not seem to be material whether the customhouse was closed for all purposes at 3 o'clock or not. The customs regulations then in force required that the customhouse should be open for business January 25 until 4.30 p. m. If it was closed before that hour, the importers have failed to show that thereby they have been deprived of an opportunity to seasonably file their protest. No effort to file it at the customhouse before 4.30 p. m. is shown or claimed, nor does it appear that the protest was prepared or ready to be filed before that time.

We have held that this provision for the closing of the customhouse at 4.30 p. m. is a reasonable one. Gallagher *v.* United States (1 Ct. Cust. Appls., 69; T. D. 31034); Talbot *v.* United States (1 Ct. Cust. Appls., 415; T. D. 31483).

No reason presents itself for now coming to a different conclusion.

The claims of the importers seem to be that they have the right, after the prescribed and reasonable hour for closing the customhouse has arrived, to mail their protest to the collector addressed to him at the customhouse, and if it is there received that day by another person, one to whom the authority of receiving protests has not been delegated, and is not in fact received by the collector or his repre-

sentative authorized to receive it until the time for giving notice thereof has expired, it is nevertheless sufficient notice.

We can not agree with this view of the law.

Any question as to what might have been the importers' rights or remedy if the protest had been presented between the hours of 3 and 4.30 p. m., and not filed because of the fact that no one was at the customhouse to receive it, is expressly reserved.

The judgment of the Board of General Appraisers is *affirmed*.