GOAT AND SHEEPSKIN IMPORT Co. *et al. v.* UNITED STATES (No. 1241).[1]

1. CONSTRUCTION.

Commercial designation is first to be ascertained and if found to exist it controls the application of the language of the statute.

2. IBID.

Where two terms of description are differentiated in a statute and in another paragraph one of these terms is employed, its use here must be taken to be confined to the single subject matter expressed, exclusive of the other.

3. IBID.

An administrative interpretation, long continued and adopted in legislation, is controlling.

4. LAMBSKINS NOT SHEEPSKINS.

In conformity with these principles of construction lambskins can not be deemed sheepskins, and the merchandise was entitled to free entry whether classified under either paragraph 574 or 676, tariff act of 1909.

United States Court of Customs Appeals, January 14, 1914.

APPEAL from Board of United States General Appraisers, Abstract 32961 (T. D. 33594).

[Reversed.]

*Comstock & Washburn* for appellants.

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Charles D. Lawrence,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal brings up for determination the dutiable classification of lambskins under the tariff act of 1909. The importation was of Russian lambskins. Free entry was accorded those upon which there was no wool. On the wool contained upon the others there was levied by the collector of customs at the port of New York duty at the rate of 3 cents per pound under the provisions of paragraphs 370 and 371 of said act. The importers, who are the appellants here, claim that the lambskins, inclusive of the wool, are entitled to free entry. Other contentions are made by the appellants, but in our view of the case they are not controlling and the merchandise is entitled to free entry under the provisions of either paragraph 574 or 676 of the act. These several paragraphs read:

370. On wools of the third class and on camel's hair of the third class the value whereof shall be 12 cents or less per pound, the duty shall be 4 cents per pound. On wools of the third class, and on camel's hair of the third class, the value whereof shall exceed 12 cents per pound, the duty shall be 7 cents per pound.

371. The duty on wools on the skin shall be 1 cent less per pound than is imposed in this schedule on other wools of the same class and condition, the quantity and value to be ascertained under such rules as the Secretary of the Treasury may prescribe.

574. Fur skins of all kinds not dressed in any manner and not specially provided for in this section.

676. Skins of all kinds, raw (except sheepskins with the wool on), and hides not specially provided for in this section.

The Board of General Appraisers in overruling these protests succinctly stated the position taken by quoting from a previous decision of the board the following concise statement:

It is wholly immaterial whether the skins are of sheep or lambs; the growth thereon is wool, and subject to duty as such.

It is a fundamental principle of statutory construction, which we think this statement overlooks, that in the determination of the force and effect of every statute the whole act must be read together and each part, if possible, be given some efficiency. If the dutiable provisions, paragraphs 370 and 371, quoted *supra*, stood alone, unaffected by any other provisions of the tariff law, we might be justified in saying that the importation is in part at least of wool, that wool is made dutiable under these provisions, and, therefore, this merchandise should be accordingly rated for dutiable purposes. But these dutiable provisions do not stand alone, and whatever force and effect is accorded them by construction must be subject to and in harmony with the associated provisions *in pari materia* of the same act.

The case as presented is one which is fraught with serious doubt. It is not one in which the legislative words and purpose are free from serious question. Accordingly, in the ascertainment of the legislative meaning, we are controlled by the intent indicated by the well-known rules of statutory interpretation and construction. In this inquiry in this case there is afforded the exceptional situation that all the applicable rules of statutory construction lead to the same conclusion.

First and foremost of the rules of construction applicable to a customs revenue measure is the primary one that the words of the legislative body must be considered to have been used in conformity with the customs and usages of the particular trade. Commercial designation is first to be ascertained, and, if found to exist, held to control the application of the language of the legislature. Cadwalader *v.* Zeh (151 U. S., 171–176), United States *v.* Vandegrift & Co. (3 Ct. Cust. Appls., 161; T. D. 32457), Guthman, Solomons & Co. *v.* United States (3 Ct. Cust. Appls., 286; T. D. 32574).

This record presents no conflict upon this question of fact. Three witnesses testified, two on behalf of the importer and one on behalf of the Government. Those who testified on behalf of the importer were long experienced wholesale dealers in sheepskins and lambskins. The Government witness who testified was the examiner of this class of merchandise at the port of New York, of admitted qualifications and long experience. They all agreed that in the trade and commerce of the country there was a well defined, long established, and generally accepted distinction between lambskins and sheepskins. They likewise agreed that this distinction was

clearly and easily distinguishable, resting itself in the differences of appearance, weight, and texture, size and use of the respective articles. The significance of this distinction is made obvious by the language of paragraph 676 of the free list. It is conceded by all parties, as is made apparent by a reading of the various provisions *in pari materia* of the act, that if lambskins are not included within the exception to paragraph 676 of the free list, they fall within the purview of that paragraph, and hence as "skins of all kinds" are entitled to free entry. Preliminary to this inquiry we are confronted with the rule that the exception which carves out of the statute something ordinarily included within its purview must be strictly construed. "An exception is strictly construed." (2 Lewis Sutherland Statutory Cons., sec. 351.) Bearing in mind then that the exception in paragraph 676, which is related to sheepskins alone, must be strictly construed, and being at the same time confronted by undisputed testimony in the record that the trade and commerce of the country did not recognize lambskins as sheepskins, there would seem to be no escape from the conclusion that the Congress did not intend to include them as such, but did include them in the more general language of the purview of that paragraph as "skins of all kinds."

The second rule of construction here applicable is that of legislative differentiation. The question for solution being whether or not in paragraph 676 the Congress intended to include within the word sheepskins, lambskins as well, some light is thrown upon the question by the contrasted use of the respective words, not alone in the act under consideration, but in previous acts *in pari materia*. It is a logical inference and a legal probability, if not conclusion, that if the Congress in its legislation upon this subject has differentiated the words, using both to express its purpose where both were intended to be included, that the use of but one of these words was intended by Congress to be confined to the single subject matter expressed exclusive of the other.

Addressing our attention first to the act under consideration (the tariff act of 1909), we find in paragraph 451 that Congress has levied a duty upon both sheepskins and lambskins; that it did not content itself with the use of the word sheepskins alone, but uses the language "sheep and goat skins (including lamb and kid skins)   *   *   *   ." When, therefore, we turn therefrom to paragraph 676 of the same act, which is the provision which excepts out of paragraph 451 that which otherwise would be included therewithin, it being the competing paragraph in the law with the foregoing one, and find that Congress has taken out of the purview of that paragraph by exception sheepskins only, we can see no escape from the conclusion that the word sheepskins in paragraph 676 was used advisedly in contrast with both

sheepskins and lambskins in paragraph 451, and did not include lambskins. If this were an entirely new provision of tariff law with which the legislative body was dealing it might with more force be contended that the congressional expression was accidental and not intentional, though that would not necessarily change or affect the rule of construction. The force of this suggestion, moreover, is entirely neutralized by an advertence to previous tariff acts *in pari materia.* The subject matter, lambskins, as expressly distinguished from sheepskins in the language above quoted from paragraph 451, first made its appearance in paragraph 456 of the tariff act of 1890 in the same form, wherein the Congress legislated as to "sheep and goat skins, including lamb and kid skins, * * * ." The language was repeated in paragraph 341 of the tariff act of 1894 and paragraph 438 of the tariff act of 1897. So that covering a period of almost 20 years, during which four reenactments of this legislative subject were had by Congress, this language and differentiation was repeated and continued.. It is not without significance that coincident with the appearance of this phrase in the tariff act of 1890 there also appeared in the free list of that act, paragraph 605, the phrase exempting from duty "skins, except sheepskins with the wool on." Paragraph 505 of the free list of the tariff act of 1894 equally significantly dropped this exceptive language, because all wool was put upon the free list by that act. The tariff act of 1897, however, free list paragraph 664, reenacted the provision in the same language that it appears in this act, and as it appeared in competition with the words of paragraph 438 of that act, "sheep and goat skins (including lamb and kid skins) * * * ." It would seem, therefore, that the Congress, after quite 20 years and during the enactment of four different tariff acts, has not only observed a distinction between sheepskins and lambskins, but has pursued a consistent policy with reference to its exception from such free list provisions of sheepskins alone.

At the oral argument in this court counsel for the Government cited various instances from well-considered cases wherein it was held either directly or by inference that the word "lamb" was included within the word "sheep." Aside from the fact that those are not the words here under consideration, sheepskins and lambskins, which are probably dealt in by different trades and, therefore, treated differently according to the trade understanding, there is the more pronounced reason rendering such cases inapplicable, or at least not controlling, resting in the fact that those words as thus construed appear in statutes having different associate provisions *in pari materia.* The context of the statutes being different the legal effect of one word upon the other must be different. For these reasons it is obvious that while such cases may be instructive they are by no means conclusive.

The third rule of construction here applicable leads to the same conclusion. This rule fortifies the second above considered. It is that where a certain uniform construction has been given a tariff provision by those intrusted by the law with its enforcement, interpretation, and construction, such reading will be adopted by the courts, not alone on account of long-continued usage, but as in this case, where the same words have been repeatedly reenacted by Congress as a legislative interpretation. Psaki Bros. v. United States (3 Ct. Cust. Appls., 479; T. D. 33122), United States v. Post & Co. (3 Ct. Cust. Appls., 260; T. D. 32568).

In the tariff act of 1883 (par. 706), and many acts antedating the same, as well as in the tariff act of 1890 (par. 588), in the tariff act of 1894 (par. 493), in the tariff act of 1897 (par. 562), and in the tariff act of 1909 (par. 574), there appears a provision for "fur skins of all kinds not dressed in any manner." To those provisions in the tariff acts of 1897 and 1909 were added the words "and not specially provided for in this act" (1909—"section"). The uniform classification, so far as we have been able to discover, of lambskins with the wool on seems to have been to classify them as fur skins under these provisions of the various tariff laws. To the same effect and of equal force was the uniform holdings of the same authorities that where lambskins were tanned or dressed they were classifiable as "furs tanned or dressed" under the same tariff acts and the respective applicable provisions thereof. See G. A. 45 (T. D. 10324), G. A. 1508 (T. D. 12957), G. A. 2907 (T. D. 15726), G. A. 4109 (T. D. 19136), Mavtner v. United States (84 Fed., 155), Fleet v. United States (148 Fed., 335).

This claim is made in the protest. Inasmuch, however, as the result must be the same, whether the goods are classified under paragraph 574 or 676 of the free list, the determination of that question is here unnecessary.

"Fur skins of all kinds not dressed in any manner" are equally though more generally provided for as "skins of all kinds" and free entry is provided for all such. If they are not skins they are furs, and vice versa, and in either case they are enumerated articles and hence not nonenumerated within paragraph 480 of the act.

In United States v. Bennet (66 Fed., 299), the United States Circuit Court of Appeals for the Second Circuit determined that angora goat skins with the hair or wool on were entitled to free entry under the provisions of paragraph 588 of the tariff act of 1890 as "fur skins of all kinds not dressed in any manner."

Confirmation of these views is found in Encyclopedia Britannica, eleventh edition, article "Fur." In enumerating and defining the classes of such the following occurs:

*Lambs.*—The sorts that primarily interest the fur trade in Europe and America are those from south Russia, Persia, and Afghanistan, which are included under the following wholesale or retail commercial terms: Persian lamb, broadtail, astrachan,

Shiraz, Bokharan, and caracul lamb. With the public the general term astrachan is an old one, embracing all the above curly sorts; the flatter kinds, as broadtail and caracul lamb, have always been named separately. The Persian lambs, size 18 by 9 inches, are the finest and the best of them. When dressed and dyed they should have regular, close, and bright curl, varying from a small to a very large one, and if of equal size, regularity, tightness, and brightness, the value is comparatively a matter of fancy. Those that are dull and loose or very coarse and flat in the curl are of far less market value.

Lastly. With all applicable canons of construction conducing to the conclusion stated, in the presence of an obviously doubtful question of law, this court is bound to construe the statute that the importers, appellants here, shall be accorded the benefit of the doubt. Woolworth *v*. United States (1 Ct. Cust. Appls., 120–122; T. D. 31119), United States *v*. Hatters' Fur Exchange (1 Ct. Cust. Appls., 198–202; T. D. 31237), United States *v*. Matagrin (1 Ct. Cust. Appls., 309–312; T. D. 31406), United States *v*. Harper (2 Ct. Cust. Appls., 101–105; T. D. 31655), American Express Company *v*. United States (3 Ct. Cust. Appls., 475–479; T. D. 33121), United States *v*. American Bead Company (3 Ct. Cust. Appls., 509–515; T. D. 33166), Newhall *et al. v*. United States (4 Ct. Cust. Appls., 134; T. D. 33410.

*Reversed.*