AMERICAN IMPORT CO. *v.* UNITED STATES (No. 4139)[1]

---

[1] C. A. D. 3.

United States Court of Customs and Patent Appeals, May 31, 1938

*Lawrence & Tuttle* (*Charles F. Lawrence* and *George R. Tuttle* of counsel) for appellant.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel G. McGrath* of counsel), for the United States.

[Oral argument April 12, 1938, by Mr. Tuttle and Mr. Charles D. Lawrence]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:[2]

Certain electric-light bulbs in part of brass, which is an alloy of copper, the copper comprising over 4 per centum of the weight of the bulbs, but not the chief value thereof, all the copper being in the alloy, were imported at the port of San Francisco under the Tariff Act of 1930. In addition to assessing duty under the *eo nomine* provision therefor in paragraph 229 of said act, which assessment is not controverted, the collector assessed the merchandise with a tax of three-

---

[2] JACKSON, Judge, took no part in the consideration or decision of this case.

fourths of 1 cent per pound under section 601 (c) (7) of the Revenue Act of 1932, the pertinent portions of which latter act read as follows:

SEC. 601. EXCISE TAXES ON CERTAIN ARTICLES.

\*     \*     \*     \*     \*     \*     \*

(c) There is hereby imposed upon the following articles sold in the United States by the manufacturer or producer, or imported into the United States, a tax at the rates hereinafter set forth, to be paid by the manufacturer, producer, or importer:

\*     \*     \*     \*     \*     \*     \*

(7) [1] Copper-bearing ores and concentrates and articles provided for in paragraph 316, 380, 381, 387, 1620, 1634, 1657, 1658, or 1659 of the Tariff Act of 1930, 4 cents per pound on the copper contained therein: \* \* \* [2] All articles dutiable under the Tariff Act of 1930, not provided for heretofore in this paragraph, in which copper (including copper in alloys) is the component material of chief value, 3 cents per pound. [3] All articles dutiable under the Tariff Act of 1930, not provided for heretofore in this paragraph, containing 4 per centum or more of copper by weight, 3 per centum ad valorem or ¾ of 1 cent per pound, whichever is the lower. The tax on the articles described in this paragraph shall apply only with respect to the importation of such articles. \* \* \* [Numerals in brackets ours.]

The assessment was under that portion of said section 601 (c) (7) which is preceded by our figure [3] and was protested by the importer on the ground that said provision should not be made applicable to the brass in the electric-light bulbs since brass was an alloy and that said provision [3] was not intended to apply to alloys.

The United States Customs Court, Second Division, overruled appellant's protest, and from its judgment appellant has appealed here.

Appellant grounds its argument that provision [3] was not intended by Congress to relate to alloys containing copper upon four well-known rules or principles relating to construction which are, by appellant's counsel, succinctly and accurately stated and supported by an abundant citation of authority.

The first rule relied upon is the rule of *expressio unius est exclusio alterius*—the expression of one thing implies the exclusion of others. Appellant applies the rule in the instant case by pointing out the fact that Congress in provision [2] *supra* included "copper in alloys," while in provision [3] no such expression was used. Numerous cases, most of which relate to customs issues, were cited where such rule was stated and regarded as controling. It is proper, we think, to apply the rule for whatever effect it may have under the circumstances at bar, but for reasons hereinafter stated, we think that it is not controlling of decision here. The said rule is well understood and is frequently given controling influence in the decision of customs cases as well as other cases, but nevertheless it is but a rule of construction and like all such rules must yield to the master rule in the construction of statutes which is so to interpret them as to carry out the legislative

intent. *United States* v. *Clay Adams Co., Inc.*, 20 C. C. P. A. (Customs) 285, T. D. 46078. The rule is only regarded as controling when other rules of construction or other circumstances connected with the case do not more persuasively suggest a congressional intent to the contrary.

The second rule invoked by appellant is that it is well-settled (and we think it is) that, if possible, effect must be given to all parts of a statute. It is asserted that if it be held that the term "copper" in provision [3] includes alloys, then no effect whatever is given to the alloy provision in provision [2] where the term "including copper in alloys" is used. We do not agree with appellant's contention in this regard, but think that the rule, in its broader aspects, controls the decision of this case as will hereinafter appear.

The third premise of appellant is that Congress in the controverted section has made a statutory differentiation between the two classes of merchandise—copper and copper in alloys—and that Congress having done so it would be improper for this court to treat copper alloys as "containing" copper. Several authorities, emphasizing and applying this rule, are cited.

Lastly, appellant makes a point of the use of the word "including" in provision [2] where "copper in alloys" is referred to, and maintains that that word has usually been held to be a word of extension, and that therefore the term "copper (including copper in alloys)" constitutes a broader provision than does the term "copper" in provision [3]. On this phase of the case is cited the case of *Goat and Sheepskin Import Co. et al.* v. *United States*, 5 Ct. Cust. Appls. 178, T. D. 34254, where the phrase "sheep and goat skins, including lamb and kid skins" was held to involve a statutory differentiation of lamb skins and sheep skins. The converse of this principle was stated by Chief Justice Marshall in *Brown* v. *Maryland*, 25 U. S. 419, 438, as follows:

\* \* \* If it be a rule of interpretation to which all assent, that the exception of a particular thing from general words, proves that, in the opinion of the lawgiver, the thing excepted would be within the general clause, had the exception not been made, we know no reason why this general rule should not be as applicable to the constitution as to other instruments. \* \* \*

From this premise it is argued that the term "including copper in alloys" was, by Congress, inserted in the controverted provision upon the theory that if it had not been inserted, copper in alloys would not have been subject to that provision.

Regardless of the applicability of certain of the rules invoked by appellant, we feel certain that from the context of the provision as a whole (and we must give effect to all its parts), it must be concluded that in the controverted provision Congress sought to tax articles containing copper in quantities of 4 per centum or more, even though the copper was in an alloy.

The first part of the subsection provides for "Copper-bearing ores and concentrates and articles provided for in paragraph 316, 380, 381, 387, 1620, 1634, 1657, 1658, or 1659 of the Tariff Act of 1930, 4 cents per pound *on the copper contained therein.*" An examination of these paragraphs discloses that paragraph 316, in the metal schedule, is the wire paragraph and contains provision for wire of "other metal" (than iron or steel) which may include copper and brass.

Paragraph 380 calls for German silver, or nickel silver, unmanufactured, and for nickel silver sheets, strips, rods, and wire.

Paragraph 381 includes certain copper articles as well as brass rods, sheet brass, brass plates, bars, and strips, and other brass articles.

Paragraph 387 calls for phosphor-copper.

Paragraph 1620 calls for bells, broken, and bell metal, broken and fit only to be remanufactured.

Paragraph 1634 provides for brass and clippings from brass or Dutch metal, fit only for remanufacture.

Paragraph 1657 calls for composition metal of which copper is the component material of chief value.

Paragraph 1658 provides for copper ore, as well as old copper and other copper material.

Paragraph 1659 provides for copper sulphate, copper acetate, and subacetate or verdigris.

It will thus be seen that in the first part of subsection (c) (7) Congress deliberately sought out the various copper and brass provisions of the entire tariff act and specifically brought them within the revenue taxing provision in controversy. Not satisfied with this, it went further and made two catch-all provisions devoted first, in subdivision [2], to articles dutiable under the act, not provided for in subdivision [1], "in which copper (including copper in alloys) is the component material of chief value." Next, in subdivision [3], it provided for all articles dutiable under the tariff act, not provided for in subdivisions [1] and [2], which contained 4 per centum or more of copper by weight. This indicates a disposition on the part of the legislature to reach copper in all forms including copper in all kinds of articles if 4 per centum or more of the weight of the article is copper.

It will be noticed that in the first part of the subsection relating to articles provided for in the paragraphs named, provision is made for the copper contained therein without the use of the term "including copper in alloys" and yet, in a number of the paragraphs specifically referred to, nothing but a copper alloy was provided for. For instance, in paragraph 1634, everything named is an alloy of copper. Surely it cannot be logically contended that in provision [1] it was not intended to include copper in the form of alloys for the reason that the language "including copper in alloys" was not therein contained. If

we must read the term "in alloys" into that provision, we find no logical excuse for not reading it into the provision under which the merchandise at bar was assessed. To hold with importer would be to take out of the subsection a very large portion of the particular merchandise which obviously Congress intended to reach.

So we conclude, for the reasons aforesaid, that the context of the subsection as a whole suggests an intention on the part of Congress contrary to that which appellant urges.

The protest of the appellant was properly overruled and the judgment of the United States Customs Court is *affirmed*.

[1] C. A. D. 4.
[2] JACKSON, Judge, took no part in the consideration or decision of this case.