**ANDREW FISHER CYCLE CO., Inc.**

v.

**UNITED STATES.**

**C.D. 3717; Protest Nos. 66/9715–16138–65, 66/76629–25897–66, 66/79391–25968–66.**

United States Customs Court, First Division.

Feb. 24, 1969.

Brooks & Brooks (Michael T. Crimmins, of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Sheila N. Ziff and Herbert P. Larsen, New York City, trial attys.), for defendant.

Before WATSON and MALETZ, Judges.

**1116**

WATSON, Judge:

The merchandise in these protests consists of certain saddles for bicycles which were classified under item 732.36 of the Tariff Schedules of the United States at the rate of 30 per centum ad valorem under the provision therein for "Other parts of bicycles".

Plaintiff in this case claims the merchandise properly classifiable under item 790.30 of said tariff schedules at the rate of 12.5 per centum ad valorem under the provision for "Harness, saddles, and saddlery, and parts thereof."

No witnesses appeared either on behalf of the plaintiff or the defendant. However, two exhibits, stipulated by counsel for the parties to be representative of the imported merchandise, were received in evidence (plaintiff's exhibits 1 and 2, R.3–4). It was also stipulated that the "articles represented by Plaintiff's Exhibits 1 and 2 are known, bought and sold in the wholesale and retail bicycle trade of the United States, as saddles." Counsel further stipulated that said articles "are dedicated to use as seats for bicycles." (R.5.)

Plaintiff, directing our attention to a number of lexicographic definitions of the word "saddle", maintains that the common meaning of the word "saddle" encompasses the articles at bar and thereby provides for their proper classification under item 790.30 of the tariff schedules.

Research discloses that since at least 1895 the common meaning of the term "saddles" has included bicycle seats. In Funk & Wagnalls, Standard Dictionary of the English Language (1895), we find:

> saddle 1. A seat or pad, commonly of leather and stretched over a frame or tree, to support a rider on the back of a beast, especially of a horse; also, a similar seat for one who rides on a cycle. * * *

Webster's New International Dictionary (1930):

> saddle * * * 2. A seat of any of various shapes, for a rider on a bicycle, tricycle, motor cycle, or the like.

Further, as heretofore indicated, counsel for the respective parties have stipulated that the involved merchandise (plaintiff's exhibits 1 and 2) are known, bought and sold in the wholesale and retail bicycle trade of the United States as "saddles". Tariff descriptions of merchandise are stated in the language in general usage in the wholesale trade in the United States. Goat & Sheepskin Import Co. et al. v. United States, 5 Ct.Cust.Appls. 178, T.D. 34254. The commercial meaning of a term is that in effect at the time of enactment. R. J. Saunders & Co., Inc. v. United States, 49 CCPA 87, C.A.D. 801; United States v. Weigert-Dagen et al., 39 CCPA 58, C.A.D. 464. The parties herein have stipulated that the treatment of the involved articles in the wholesale and retail trade of the United States as "saddles" existed at the time of passage of the Tariff Classification Act of 1962. (R.5.) Further, it has been stipulated that the articles under consideration are dedicated to use as seats for bicycles. It would thus appear that the commercial designation of the term "saddles" encompasses bicycle seats.

In our opinion, item 790.30 of the tariff schedules, as indicated by the above factual stipulations, is a specific *eo nomine* provision for bicycle seats. Bicycle seats are also unquestionably "parts" of bicycles. In these circumstances, the involved merchandise is properly classifiable under the *eo nomine* provision for saddles in item 790.30 of the tariff schedules, by virtue of the General Interpretative Rule 10(ij) of the General Headnotes and Rules of Interpretation of the Tariff Schedules which provides as follows:

> provision for "parts" of an article covers a product solely or chiefly used as a part of such article, *but does not prevail over a specific provision for such part.* [Emphasis supplied.]

The purpose of rule 10(ij) was to eliminate the uncertainty existing in connection with the tariff treatment of "parts" of articles prior to the enactment of the tariff schedules. Under earlier tariff acts, in some instances a mere provision

for "parts" prevailed over much more specific descriptions in the tariff schedules. Under the rule expressed in headnote 10(ij), *these specific provisions will prevail over a mere provision for "parts" of a particular article.* [Emphasis supplied.] Tariff Classification Study Submitting Report (November 15, 1960), page 19.

Defendant, maintaining that bicycle seats are classifiable as parts of bicycles, directs our attention to a number of cases wherein bicycle saddles were held properly classifiable as parts of bicycles rather than under other claimed provisions of the pertinent tariff acts. F. F. Rick & Co. v. United States, 24 Treas.Dec. 1139, Abstract 32881; American Thermo-Ware Co. v. United States, 29 Treas.Dec. 21, Abstract 38014; and Mead Cycle Co. v. United States, 51 Treas.Dec. 1118, Abstract 2231. However, these cases, in our opinion, are not controlling in our present determination. In the *Rick* and *American Thermo-Ware* cases, *supra,* a tariff provision for "saddles" was not even involved. Rather, these cases held that a tariff provision for "parts" prevailed over other tariff provisions, a situation which Rule 10(ij) was designed to rectify in cases where there was a specific tariff provision for such part.

In the *Mead Cycle* case, *supra,* the original record discloses that the court's entire comment was as follows: "There is nothing in the record to show that the saddles in question consist of harness or saddlery as claimed, or that they are not merely parts of bicycles." This statement can hardly be construed as a clearcut holding that "saddles" excluded bicycle "saddles". Further, in the *Mead* case, even if it be construed to hold that "saddles" excluded bicycle "saddles", the doctrine of legislative ratification was not applicable therein. For one thing, the case was not brought to the attention of Congress by way of Summaries of Tariff Information or the Tariff Classification Study, nor does it appear in any committee report as a bill to revise the tariff act. Moreover, the doctrine of legislative ratification does not apply to an abstract of a judicial decision which is published without opinion. Cunard Steamship Co., North German Lloyd v. United States, 22 CCPA 615, 620–621, T.D. 47605; W. E. Sellers, etc. v. The Cronite Co., Inc., The Cronite Co., Inc. v. United States, W. E. Sellers, etc., 45 CCPA 27, 36, C.A.D. 668.

For the reasons heretofore advanced, we hold the merchandise in question properly classifiable under item 790.30 of the Tariff Schedules of the United States at the rate of 12.5 per centum ad valorem under the provision therein for "Harness, saddles, and saddlery, and parts thereof", as claimed. The protests are sustained. Judgment will issue accordingly.