(C.D. 4489)

DUSHOFF DISTRIBUTING CORP. *v.* UNITED STATES

Court No. 68/44403

(Decided December 6, 1973)

*Allerton deO. Tompkins* for the plaintiff.
*Irving Jaffe*, Acting Assistant Attorney General (*Joseph I. Liebman* and *David A. Ast*, trial attorneys), for the defendant.

Rao, Judge: The merchandise involved in this case is described on the invoice as honed Carrara marble saddles, 4 inches wide, ¾-inch high, in lengths of 24, 26, 28, 32, and 36 inches. They were assessed with duty at 21 per centum ad valorem under item 514.81, Tariff Schedules of the United States, as marble articles, not specially provided for. It is claimed that they are properly dutiable at 7 per centum ad valorem under item 514.65, as marble slabs, rubbed or polished in whole or in part. An alternate claim in the complaint for classification under item 514.61, as marble slabs, not rubbed or polished in whole or in part, has apparently been abandoned.

The pertinent provisions of the tariff schedules are as follows:

Schedule 5, part 1

## Subpart C. – Stone and Stone Products

Subpart C headnotes:

> \*       \*       \*       \*       \*       \*       \*
> 2. The term "slabs" (items 514.61 and 514.65) embraces flat stone pieces, not over 2 inches in thickness, having a facial area of 4 square inches or more, whether or not cut to size and whether or not one or both surfaces have been rubbed or polished, the edges of which have not been beveled, rounded or otherwise processed

except such processing as may be needed to facilitate installation as tiling or veneering in building construction.

\* \* \* \* \* \* \*

Marble, breccia, and onyx, and articles
of one or more of these substances:
Marble, breccia, in block, rough or
squared only_____ \* \* \*

\* \* \* \* \* \* \*

Slabs:

| | | |
|---|---|---|
| 514.61 | Not rubbed and not polished in whole or in part_____ | 5.5% ad val. |
| 514.65 | Rubbed or polished in whole or in part_____ | 7% ad val. |
| 514.81 | Other, not specially provided for__ | 21% ad val. |

In the pleadings defendant has conceded that the merchandise is of marble, is not in block, rough or squared only, is not over 2 inches thick, is rubbed or polished in whole or in part, and has a facial area of 4 square inches or more. It denies that the merchandise is flat and denies that it has edges which have not been beveled, rounded or otherwise processed except such processing as may be needed to facilitate installation as tiling or veneering in building construction.

Plaintiff called two witnesses at the trial: Henry J. Maier, general manager of Dushoff Distributing Corp., which firm handles ceramic and mosaic tiles, and items used in conjunction with tiling, such as marble thresholds and saddles, and other sundry items, such as tools, insets, and mortars; and Francis Trevisan, who has been in the tiling installation business almost all his life and is president of Atlas Terrazzo and Tile Company. Defendant called Malcolm S. Cohen, an officer of Domestic Marble and Stone, Inc., Domestic Stone Erectors, Inc., and Miller Druck Corp., which firms are engaged respectively in the wholesaling of finished and rough stone and marble, the installation of exterior stone and marble, and the fabrication and installation of interior marble.

Mr. Maier testified that he had purchased the merchandise involved herein and stated that two types of saddles were imported, one with a double bevel and the other with a single bevel. Two samples of merchandise with a double bevel were received in evidence as exhibits 1 and 2.

It appears from the record that ceramic tiles are used in buildings, on floors, walls and ceilings, for sanitary and decorative purposes. A marble saddle is used in a doorway as a threshold between two rooms with tiled floors or between one room with a tiled floor and one not. It may have one, two or no bevels, depending upon the elevation of the adjoining rooms. A bevel is a 45 degree angulation cut along the face

and side of the saddle. In other words, the arris is removed to a sufficient degree to form a flat surface which is at an angle to the adjacent two surfaces. Single-beveled saddles have one square edge and one beveled edge. A saddle with no bevel is seldom used and must be placed so as to be flush with the floor on both sides. A single bevel saddle is used where the tile floor is of a higher elevation than the floor outside. It provides a ramp from one elevation to another. Saddles are beveled basically as a safety measure, to prevent people from tripping because the face of the saddle is higher than the floor. Bevels make it easier to walk from one room to another without stubbing the toes. A saddle also serves as a waterstop in case there is flooding, in a bathroom for instance. The presence of a saddle requires that the door be higher, so that it may clear a rug or mat on the floor.

Marble saddles are installed in the following manner: First, the floor must be checked to see that it is level. Then either a layer of adhesive, or a thin bed of mortar, or a full mortar installation, consisting of a mixture of sand and cement, is spread on the floor. The saddle is set into it and tapped down to make sure it is securely bonded.

Plaintiff's witnesses regarded exhibits 1 and 2 as flat stone pieces since the bottom and top surfaces were flat and did not have dips, doodles, curves, or ripples. In their view the beveling did not destroy the flat effect. Defendant's witness, on the other hand, said the pieces were flat only insofar as the space between the bevels was concerned. In his opinion, a flat piece must be even between the extreme vertical edges.

Mr. Maier considered tiling to be the installation of products, such as wall tile, mosaic floor tile, and items which support the installation of such coverings. He said a saddle is tiling, in the sense that it covers a facial area. Without it, the installation of tiling in a room is not complete. A bevel on the saddle is necessary to facilitate the tiling installation.

Mr. Trevisan also regarded the saddle as a part of the tiling. Without it, he said, the tiling would be incomplete; there would be a raw edge. The bevel on the saddle completes and facilitates tile installation. It facilitates the appearance and function of the final floor arrangement, but it does not make it easier to place the article in the threshold with the mortar or adhesive.

Mr. Cohen called the imported merchandise saddle blanks because they had not been notched to fit into the contour of a door frame. He testified that saddles are not marble tiling or veneering. He defined marble tiling, as marble rectangles of various sizes, used for flooring or wall covering, and marble veneering as the use of marble as exterior or interior wall cladding.

In his opinion, the beveling on exhibits 1 and 2 does not facilitate their installation, as far as labor is concerned. They could be installed whether or not they had a bevel and the workmen putting them in would not have any more or less ease in installing them. In the industry, he said, the term "installation" means the placing or setting of the material in its final location.

The witnesses also mentioned another process applied to marble articles, called mitering. There are two types of mitering, one is a miter in which the back edge of the marble is cut at an angle so that it will meet another piece that has a similar angle cut on the back of it, to go around a corner. A quirk miter is much the same thing except that it has a slightly square edge to it. Mr. Cohen said that this process does not aid or facilitate installation. It is an architectural feature.

The question before the court is whether the imported saddles are slabs within the definition in schedule 5, part 1C, headnote 2, *supra*.

The merchandise here is not completely flat since it has been beveled. To be considered a slab under the definition, the beveling must constitute "such processing as may be needed to facilitate installation as tiling * * * in building construction."

Plaintiff claims that these words refer to the complete installation of tiling in a room; that the saddles herein are a part of tiling, and that the beveling process is necessary to facilitate or complete that installation. It says that the tiling job would be inherently defective if an unbeveled saddle were employed; that beveling done prior to delivery at the site avoids a delay that would result from having to process the merchandise on location, and that therefore it facilitates the installation of the tiling.

Defendant contends, on the contrary, that by the definition Congress intended to exclude from the provision for slabs articles whose edges have been beveled, rounded or otherwise processed for a purpose other than to ease handling during their installation.

The Tariff Classification Study of November 15, 1960, which was before Congress when the tariff schedules were adopted, states (schedule 5, p. 24) :

> A very difficult problem arises under the current provisions in determining whether the slabs or tiles have been processed for use as lamp bases, table tops, desk sets, etc. In order to make certain the intended scope of this provision, the definition specifies that a slab may or may not be cut to size and that it may or may not have one or both of its surfaces rubbed or polished, but the definition does not permit stone pieces to be included if the edges have been beveled, rounded, or otherwise processed except for such processing as may be needed to facilitate installation as tiling or veneering in building construction. The headnote is not intended to preclude from classification as slabs stone pieces the edges of which have merely been "eased" for handling purposes. The definition will result in the classification of some articles at the higher rate of 21

percent ad valorem in item 514.81. This change, however, is incidental to necessary clarification.

Under the definition, the term "slabs" is limited to flat stone pieces, not over 2 inches thick, having a facial area of 4 square inches or more, whether or not cut to size and whether or not rubbed or polished, the edges of which have not been beveled, rounded or otherwise processed. An exception to the requirement that the edges not be beveled, rounded or otherwise processed is made as to "such processing as may be needed to facilitate installation as tiling or veneering in building construction." The exception must be strictly construed and not extended to merchandise not clearly within its terms. *Goat and Sheepskin Import Co. et al.* v. *United States*, 5 Ct. Cust. Appls. 178, T.D. 34254 (1914) ; *Joleo Impex Co.* v. *United States*, 45 Cust. Ct. 6, C.D. 2189 (1960) ; *A. Zerkowitz & Co., Inc.* v. *United States*, 54 Cust. Ct. 151, C.D. 2525 (1965), *appeal dismissed*, 52 CCPA 125 (1965) ; *The De Haan Company* v. *United States*, 57 Cust. Ct. 39, C.D. 2722 (1966), *aff'd*, 55 CCPA 76, C.A.D. 936 (1968).

Under the provisions of paragraph 232 of the Tariff Act of 1930 for marble slabs and marble wholly or partly manufactured into articles, much litigation ensued as to whether particular marble pieces were material adaptable for various uses in the marble installation business, classifiable as slabs, or were wholly or partly manufactured articles. *Atlas Export Co. et al.* v. *United States*, 43 CCPA 122, C.A.D. 618 (1956) ; *United States* v. *General Shipping & Trading Co. et al.*, 44 CCPA 168, C.A.D. 656 (1957); *United States* v. *Quality Marble & Granite Co. et al.*, 48 CCPA 50, C.A.D. 763 (1960) ; *United States* v. *Selectile Co., Inc., et al.*, 49 CCPA 116, C.A.D. 805 (1962) ; *A. P. Baldechi & Son* v. *United States*, 56 CCPA 112, C.A.D. 963 (1969).

The definition in the tariff schedules was no doubt intended to provide a more objective test, that is, stone pieces which meet the specifications in the definition are slabs for tariff purposes, but those which are otherwise processed are not.

As I read the definition, it limits the processing beyond cutting to size and polishing to such as facilitates the placing or setting the stone pieces in question in their final location in the wall, floor or ceiling of a building. The Tariff Classification Study points out that the exception was intended to allow stone pieces whose edges had been "eased" for handling purposes to be classified as slabs. There is nothing in the definition or in the legislative history to indicate that Congress intended the exception to be read as broadly as claimed by plaintiff, to cover processed stone pieces used in building construction so long as the processing is necessary to complete a floor arrangement or tiling job or avoid delays caused by having the work done at the site. To so construe it would thwart the purpose of the definition and open the door to more litigation.

While a beveled saddle may be necessary to complete a flooring project, it cannot be a slab within the meaning of the definition unless beveling facilitates the installation of the saddle in the floor. The evidence establishes that the imported saddles were beveled for safety purposes and not to ease handling or aid in their installation in thresholds. Therefore, they do not fall within the definition.

For the reasons stated, I hold that the imported marble saddles are not classifiable as slabs under the tariff schedules.

The action is dismissed. Judgment will be rendered accordingly.