## B. BLUMENTHAL & CO. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit.  December 20, 1905.)

### No. 41.

CUSTOMS DUTIES—CLASSIFICATION—RHINESTONE BUTTONS—PASTE DIFFEREN-
TIATED FROM GLASS.

> So-called rhinestone buttons, composed of paste, are not embraced within the provision in Tariff Act, July 24, 1897, c. 11, § 1, Schedule N, par. 414, 30 Stat. 190 [U. S. Comp. St. 1901, p. 1674], for buttons of "glass," because, though paste is a kind of glass, it is distinguished from glass elsewhere in the tariff under its own peculiar name.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For decision below, see 135 Fed. 254, which affirmed a decision of the Board of United States General Appraisers, G. A. 5,640 (T. D. 25,-194), which had affirmed the assessment of duty by the collector of customs at the port of New York.

The opinion filed by the Board of Appraisers reads as follows:

SOMERVILLE, General Appraiser. The merchandise covered by each of the protests under consideration consists of what are known as "rhinestone buttons," composed of metal and paste; paste being the material of chief value in each of the articles. The goods are properly represented by the accompanying samples, which differ in size and shape. Some of the importations also differ in color. The buttons have a shank and eye, and are bought and sold by line measure, but always under the name of rhinestone buttons. They are used chiefly as ornaments attached to the wearing apparel of women. Some of the goods were assessed for duty at 45 per cent. ad valorem under Tariff Act July 24, 1897, c. 11, § 1, Schedule B, par. 112, 30 Stat. 158 [U. S. Comp. St. 1901, p. 1635], which levies that rate of duty upon "manufactures of glass or paste, or of which glass or paste is the component material of chief value, not specially provided for" in said act. In some instances the goods were assessed for duty at the rate of 50 per cent. ad valorem under paragraph 414, Schedule N, of said act, 30 Stat. 190 [U. S. Comp. St. 1901, p. 1674], which provides that rate of duty for "buttons not specially provided for" in said act. The same paragraph enumerates various kinds of buttons; among others, buttons of bone, pearl, or shell, "buttons of horn, vegetable ivory, glass or metal," which are made dutiable at three-fourths of 1 cent per line per gross, and in addition thereto 15 per cent. ad valorem.

Various claims are made in the protest, but none was relied on at the hearing, except the contention that the rhinestone buttons in question are dutiable as buttons of glass or metal, as enumerated in said paragraph 414. "Buttons made of glass or metal" manifestly means buttons made in chief value of glass or in chief value of metal. Schiff v. U. S., 99 Fed. 555, 39 C. C. A. 652; In re Alms & Doepke Co., G. A. 4,532 (T. D. 21,452); U. S. v. Churchill (C. C.) 106 Fed. 672. The articles under consideration, being made of rhinestone, which is a species of paste, the sole question for decision would resolve itself

into an inquiry as to whether buttons made in chief value of paste are to be classified as manufactures of paste or as glass buttons.

Counsel for the importers contends that paste is a species of glass, and that therefore "buttons made of glass" would be more specific than "manufactures of paste." While it is true that paste, sometimes known as "strass," may in the broadest sense be considered as a kind of glass, yet for tariff purposes Congress has seen fit to differentiate it as a separate substance under its own peculiar name, "paste." The reason for this differentiation may be its greater value and its common use for making artificial gems, and especially gems in imitation of diamonds, used for cheap jewelry, fancy buckles, clasps, and ornaments for the hair. This is illustrated by the provisions contained in various tariff acts, as shown in the following list:

Act March 3, 1883, c. 121, Schedule N, 22 Stat. 511:

"Par. 420. Compositions of glass or paste, when not set, ten per centum ad valorem."

Act Oct. 1, 1890, c. 1244, Schedule N, 26 Stat. 601:

"Par. 454. Imitations of precious stones composed of paste or glass not exceeding one inch in dimensions, not set, ten per centum ad valorem."

Act Aug. 27, 1894, c. 349, Schedule N, 28 Stat. 535:

"Par. 351. Manufactures of paste not specially provided for, twenty-five per centum ad valorem."

"Par. 317. Buttons of glass, thirty-five per centum ad. valorem." 30 Stat. 533.

"Par. 102. Manufactures of glass, thirty-five per centum ad valorem." 30 Stat. 514.

In any event, we are of opinion that the question at issue is in effect settled adversely to the contention of the importers in the case of U. S. v. Marshall Field & Co., 85 Fed. 862, 29 C. C. A. 458. The articles there under consideration were imported under the tariff act of 1894, and are described in the opinion of the court as being in the form of buttons, having a metal shank and back, and set with a cluster of imitation diamonds. They were classified by the collector as buttons of glass, dutiable at 35 per cent. ad valorem under paragraph 317 of said act. The importers contended that they were subject to classification as manufactures of paste, or of which paste was the component material of chief value, dutiable at 25 per cent. ad valorem. Paste was shown to be the component material of chief value in every instance. The Circuit Court of Appeals held that they were dutiable as manufactures of paste, and sustained the contention of the importers to that effect, affirming the decision of the Circuit Court and also that of the Board of General Appraisers. In re Field, G. A. 3,500 (T. D. 17,183).

While the testimony in that case, as stated by the court, showed that the articles were not commercially known as "buttons," the testimony in the present case, it is true, shows that the articles here under consideration are commercially known as "rhinestone buttons." But this variation in the testimony very clearly can have no effect in leading us to a different conclusion from that reached by the court in the Field Case. The whole question, as we have said, is merely whether for tariff purposes the articles are to be classified as manufactures of paste or as glass buttons, and the issue is precisely the same as in the case above cited. This view, we may add, is sustained in principle by the decision of the United States Supreme Court in Seeberger v. Cahn, 137 U. S. 95, 11 Sup. Ct. 28, 34 L. Ed. 599, where two provisions of the tariff act of 1883 (paragraphs 362 and 363, Schedule K, "Wool and Woolens," 22 Stat. 508, 509) were construed by the court. It was there held that, while worsted may in some respects be considered as a manufacture of wool, nevertheless it was differentiated as a separate article for tariff purposes, inasmuch as it was so specially enumerated under said tariff act of 1883. The following language was used by Mr. Justice Gray: "Though worsted is doubtless a product of wool and might in some respects be considered a manufacture of wool, yet, manufactures of worsted being subjected by the second paragraph to different duties from those imposed by the first paragraph on manufactures of wool, it necessarily follows that a manufacture of worsted cannot be considered as a

manufacture of wool within the meaning of this statute." So, in the present instance, Congress has seen fit to impose a different rate of duty upon manufactures of paste from that imposed on buttons made of glass; paste buttons being nowhere enumerated eo nomine in said paragraph 414, covering buttons of various kinds.

It is unnecessary to consider whether the articles are dutiable as manufactures of paste under said paragraph 112, or under the last clause of said paragraph 414, as "buttons not specially provided for," because no such question is presented by the protest.

The protests are overruled, and the collector's decision affirmed.

Comstock & Washburn (Albert H. Washburn, of counsel), for the importers.

Charles Duane Baker, Asst. U. S. Atty.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

PER CURIAM. Decision affirmed on the opinion of the Board of General Appraisers.