### UNITED STATES *v.* BUTLER BROS. (No. 904).[1]

SPLASH MATS, CURTAINS, OR SCREENS.

The merchandise consists of wood strips, joined or sewed together with cords; figures in imitation of paintings are stenciled on these and they are used as splash mats, placed above washstands. No commercial designation is shown. The definitions of the books make it apparent that these articles may very well be designated as curtains or screens, and their use, too, warrants that classification. They were dutiable as assessed by the collector under paragraph 214, tariff act of 1909.

United States Court of Customs Appeals, November 21, 1912.

Appeal from Board of United States General Appraisers, Abstract 28361 (T. D. 32488).

[Reversed.]

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel), for the United States.

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellees

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise in question in this case consists of wood strips joined or sewn together with cords. Figures are stenciled upon them in imitation of paintings. They are used to place on the wall behind washstands to protect the wall or wall paper from contact with the washstand or from water that may be splashed up.

They were assessed for duty under paragraph 214 of the tariff act of 1909 as "curtains * * * of wood, painted or stained." This paragraph reads as follows:

Porch and window blinds, baskets, curtains, shades, or screens of bamboo, wood, straw, or compositions of wood, not specially provided for in this section, thirty-five per centum ad valorem; if stained, dyed, painted, printed, polished, grained, or creosoted, forty per centum ad valorem.

The board held them dutiable, as claimed by the importers, at 35 per cent ad valorem, under paragraph 215, as manufactures of wood, on the authority of Woolworth *v.* United States (152 Fed. Rep., 483).

As paragraph 214 of the act of 1909 is new, and the act of 1897 contained no provision similar to it, it is obvious that the decision in Woolworth *v.* United States can be treated as authority no further than as establishing that the importation would be properly dutiable as house furniture of wood in the absence of any more specific enumeration.

---

[1] Reported in T. D. 32984 (23 Treas. Dec., 458).

The question, therefore, as to whether these articles can be treated as curtains or screens and thus fall within paragraph 214 is an open one. In Woolworth *v.* United States they were referred to as splash mats or screens.

It is contended by the importer that these are not screens in fact. The only witness in the case was a witness produced on behalf of the importer, whose testimony falls short of establishing commercial designation. He testified, indeed, that he had never known this article to be bought and sold as a screen, but there was no such testimony of familiarity with the market as to make this testimony convincing, even if we assume that commercial designation could be established by a single witness. The testimony did further disclose that screens made in the same form as the article imported, woven in the same way, only that they were larger, would be used as screens for porches.

We think this article may be very well designated as a curtain or screen. The definition of a curtain as given by Webster is:

A hanging screen intended to darken, conceal, or *protect*, or sometimes merely to be *ornamental*, usually admitting of being drawn back or up at pleasure; esp., drapery of cloth or lace round a bed or at a window; in theaters, and like places, a movable screen for concealing the stage, or a fireproof screen for preventing the spread of fire to or from the stage.

The Century defines "curtain" as—

A hanging screen of a textile fabric (or rarely of leather) used to close an opening, as a doorway or an alcove, to shut out the light from a window, and for similar purposes. Hence, whatever *covers* or conceals like a curtain.

The verb "screen" is defined by Webster:

To separate or cut off from inconvenience, injury, or danger; to shelter; to protect; to protect by hiding; to conceal; as fruits, screened from cold winds by a forest or a hill.

The Century defines the verb:

To shelter or protect from inconvenience, injury, danger, or observation; cover; conceal.

The noun "screen" is defined by Webster:

Anything in the nature of a partition or curtain, as a portable covered framework, that cuts off inconvenience, injury, or danger; that which shelters or conceals from view; a shield or protection; as, a fire screen; a window screen.

The Century:

A covered framework, partition, or curtain, either movable or fixed, which serves to protect from the heat of the sun or of a fire, from rain, wind, or cold or from other inconvenience or danger, or to shelter from observation, conceal, shut off the view, or secure privacy.

This article in its use may well be said to fall within the definition of either curtains or screens. It is used to protect the wall or wall paper from splashes of water, and also has a limited decorative

purpose. That it can be appropriately said to be a screen of wood is obvious, and we hold that it falls within the provisions of paragraph 214.

As the board found, and the importer in this court contends, that the importation is of wood chief value, it is not necessary in this case to determine whether, in order to bring a curtain or screen within the terms of paragraph 214, this element is essential. But it would seem that the very nature of curtains or screens decorated implies the presence of material to connect the parts and permit the hanging of the curtain as well as paint or colors for decoration, and that it would be sufficient under the terms of this paragraph if the predominant material of the article is found to be of wood. See United States v. Zinn (2 Ct. Cust. Appls., 419; T. D. 32171); United States v. Hempstead (175 Fed. Rep., 966); United States v. Woodruff (175 Fed. Rep., 776); Arthur v. Butterfield (125 U. S., 70, 75); and Swan v. Arthur (103 U. S., 597).

The decision of the board is *reversed* and the assessment of the collector affirmed.