BLUMENTHAL & Co. *et al. v.* UNITED STATES (No. 1344).[1]

BUTTONS OF GLASS AND FISH SCALES.

There was no evidence tending to show that the merchandise was commercially known as buttons of glass, and the evidence did not establish the fact that they were buttons composed of glass in chief value. The present case is no exception to the general rule that merchandise made, composed, or manufactured of a specified article is classified with reference to the component material of chief value, and there is here nothing to show that glass is the predominant material.

United States Court of Customs Appeals, May 28, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7530 (T. D. 34126).

[Affirmed.]

*Comstock & Washburn* for appellants.

*William L. Wemple,* Assistant Attorney General (*William A. Robertson,* special attorney, of counsel; *Samuel Isenschmid,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

This case involves a considerable number of protests by various importers and relates to buttons of different colors made of glass and fish scales. Two exhibits are returned as representing all the importations concerning which any question is made. The globes of the buttons are of hollow, transparent glass, the interior of which is lined or coated with fish scales, which coating is visible or shines through the glass and gives to the buttons the white or colored effects shown by the exhibits. The shanks seem also to be of glass. The testimony taken before the board does not show whether the glass or the fish-scale coating is the component material of chief value, nor does it appear what processes are employed in the manufacture of these buttons. They were assessed by the collector as buttons not specially provided for under paragraph 427 of the tariff act of 1909 at 50 per cent ad valorem, which assessment was sustained by the board.

---

[1] Reported in T. D. 34529 (26 Treas. Dec., 937).

This paragraph, so far as relevant to the issues here, provides for buttons of various materials, among which are mentioned bone, pearl, shell, horn, vegetable ivory, glass, and metal at different rates of duty. The rate provided for buttons of glass being three-fourths of 1 cent per line per gross and 15 per cent ad valorem; near the close of the paragraph provision is made for "buttons not specially provided for * * * and all collar or cuff buttons * * * composed wholly of bone * * * fifty per cent ad valorem."

The appellants here confine themselves to the claim that the merchandise is dutiable at three-fourths of 1 cent per line per gross, plus 15 per cent ad valorem, as buttons of glass.

Extracts from the reports of the appraiser contained in the record show that the following terms were used by him to describe the merchandise, viz, "composition-covered glass buttons," "glass buttons covered with fish scales," "glass buttons covered with composition," "buttons, some composed of glass covered with fish scales," "buttons composed of glass and covered with fish scales, the latter chief value," "celluloid covered buttons," "fish-scale covered buttons," "buttons composed in chief value of fish scales," "composition-covered buttons," "fish scale, composition-covered buttons," "composition-filled buttons," "glass buttons covered with a composition not mentioned in paragraph 427," "buttons composed of gallilith and cloth," "buttons composed of mother-of-pearl covered with fish scales, the latter chief value," "wax buttons," and "glass buttons covered or filled with fish scale."

The importers rest their claim upon two propositions, (1) that these buttons are commercially known as buttons of glass, and (2) that whether so or not they are in fact such buttons.

Before the Board of General Appraisers they introduced evidence designed to prove that the merchandise was commercially known as "glass buttons." While it is true that on their direct examination the witnesses so testified, yet upon cross-examination it clearly appeared that so far as these witnesses knew there was not in the trade any uniform and definite understanding to that effect, and that the importing firms whom the witnesses represented, as well as other wholesalers of the merchandise, did not generally or uniformly refer to these buttons as "glass buttons." If any distinction can be drawn between the terms "buttons of glass" and "glass buttons" it may be observed that the importers introduced no evidence tending to show that the merchandise was commercially known as "buttons of glass." For the purposes of this case, however, we are not disposed to consider that any such distinction exists.

The board held that the claimed commercial meaning had not been shown to be uniform and definite, and we think this holding was warranted by the testimony.

As to the second claim the importers point to the language employed by the appraiser in his reports before herein referred to, as well as certain other evidence, to support the contention that the merchandise is in fact buttons of glass.

Any claim that the buttons are *wholly* composed of glass is completely negatived by the fact that it is agreed they are composed of glass and fish scales. They can not be held to be composed of glass in chief value because, as stated, the evidence does not establish that fact.

But the importers finally argue that regardless of the question of component material of chief value, these buttons are in law buttons of glass because their framework is glass and that substance is the predominant material of which they are composed, citing United States *v.* Zinn (2 Ct. Cust. Appls., 419; T. D. 32171), United States *v.* Butler (3 Ct. Cust. Appls., 390; T. D. 32984), Hempstead *v.* United States (168 Fed., 450), and Woodruff *v.* United States (168 Fed., 452).

The general rule is that when a statute imposes duty upon an article as "made of," "composed of," or "manufactured of" a specified material without declaring to what extent it must be of that material it is at least confined to merchandise of which the specified material is the component of chief value. Kenyon *v.* United States (4 Ct. Cust. Appls., 344; T. D. 33529) and cases therein cited.

We think this rule is applicable to the merchandise in the present case. The fact that paragraph 427 expressly provides for some buttons composed *wholly* of certain materials tends to sustain the view that as to other buttons their classification thereunder depends upon their component material of chief value.

In Blumenthal *v.* United States (144 Fed., 384) the same construction was placed upon paragraph 414 of the act of 1897, which is identical with paragraph 427 so far as relates to the issue.

We are not unaware that the case of United States *v.* Zinn, *supra*, has been claimed as an authority for the proposition that predominance rather than chief value of a component material may be resorted to for the purpose of determining the classification of an article made, composed, or manufactured of more than one material.

As we have had occasion in other decisions to point out, the question there was whether baskets composed of wood containing a lining of silk were dutiable under an *eo nomine* provision for baskets of wood or as manufactures of silk. While it appeared that silk was the component raw material of chief value, it did not appear that, when the component materials, namely, the basket of wood and the silk lining were put together to make the completed article, the silk lining was of greater value than the wooden basket. Under these facts it was *decided* that the *eo nomine* designation of baskets of wood was more specific than manufactures of silk.

In the case of United States v. Butler, *supra*, the question was whether stenciled screens composed of strips of wood joined or sewn together with cords should be classified under an *eo nomine* provision for shades or screens of wood or as manufactures of wood. Wood was the component material of chief value and it was again decided that the *eo nomine* provision was the more specific.

Language was employed in the decisions in both of these cases indicating a recognition of the proposition that sometimes the classification of an article may be governed by its predominant material rather than by its component material of chief value and such is the effect of the Hempstead and Woodruff cases above cited by the importers, which cases were referred to and cited by this court in its two decisions just above mentioned.

It will be noticed that in all these cases, paragraphs containing an *eo nominé* provision were contrasted with a provision for manufactures of a material, and in each case it was held that the *eo nomine* provision was the more specific.

In the Hempstead and Woodruff cases the court classified the merchandise under an *eo nomine* provision, which, if it had been classified upon its component material of chief value, could not have been done. So far as we know, these are the leading cases upon the proposition that specific merchandise made, composed, or manufactured of an article may sometimes be classified as such, although the specified article is not the component material of chief value. The Hempstead case well illustrates the reason. There the article was an ornate wooden table decorated with brass, brass being the material of chief value. The wood, of course, was the predominant material; it gave to the table its form and shape and was its indispensable material so far as use was concerned. For all utilitarian purposes the wood was the component material of chief value. The court said that in common speech this table belonged to the class of furniture of wood, and held it so dutiable.

We are not disposed here to say that a case may not again arise relating to an article *eo nomine* referred to in a tariff statute in which it may not be held that its classification is to be determined by the predominant material rather than the component material of chief value. To warrant that holding, however, we think it must at least appear that such predominant material, though not the component of chief value, nevertheless gives to the article its name, form, and shape, and determines its character and use, and that in addition it should clearly appear that in the common understanding the *eo nomine* statutory description included the article under consideration without regard to its component material of chief value.

But independent of the view we have already expressed as to the merchandise here, we do not think the present case is any exception to the general rule that merchandise made, composed, or manu-

factured of a specified article is classified with reference to the component material of chief value.

The ordinary meaning of the word "button" is a knob, globe, or disk of some substance having a shank or perforation or other means by which it may be attached to one part of a garment and used to join it to another part by passing through a buttonhole, or it may be used for ornamentation wholly. There are various extended meanings commonly applied to the word which are not applicable here. The buttons in this case are of fragile construction, which, coupled with their shape and the fact that they are of different colors, indicates that they are designed for purposes of ornamentation; hence, while glass is the material which gives them their form and shape, there is nothing to show that in their *use* as ornaments glass is the predominant material. Considering them as ornaments it would seem that glass was not the predominant material, but that the fish scales were. The fact that the fish-scale coating is used to line the interior would seem to confirm this conclusion, otherwise its employment in the manufacture of the button was not only unnecessary but useless. In common speech we do not think they would be referrred to as buttons of glass without other descriptive language.

In view of what has already been said, it is obvious that in our opinion the judgment of the Board of General Appraisers ought to be, and it is, *affirmed.*