(C. D. 1325)

C. J. Tower & Sons *v*. United States

United States Customs Court, First Division

(Decided May 8, 1951)

Barnes, Richardson & Colburn (Joseph Schwartz and Edward N. Glad of counsel) for the plaintiff.

David N. Edelstein, Assistant Attorney General (Dorothy C. Bennett and John J. McDermott, special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges; COLE, J., concurring

MOLLISON, Judge: This case involves a consideration of a portion of the provisions of paragraph 1530 (e) of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 1530 (e)), both as originally enacted and as subsequently modified by a Presidential proclamation and a trade agreement. As originally enacted, the pertinent portion of the said paragraph read as follows:

Par. 1530. (e) Boots, shoes, or other footwear (including athletic or sporting boots and shoes), made wholly or in chief value of leather, not specially provided for, 20 per centum ad valorem; * * *

Under date of December 2, 1931, and by virtue of the provisions of section 336 of the Tariff Act of 1930, the President of the United States issued a proclamation, reported in T. D. 45311, providing for—

An increase in the rate of duty expressly fixed in paragraph 1530 (e) of Title I of said act on boots and shoes, made wholly or in chief value of leather, not specially provided for, sewed or stitched by the process or method known as McKay, from 20 per centum ad valorem to 30 per centum ad valorem.

Under date of December 23, 1942, a trade agreement was entered into between the United States of America and the United Mexican States, reported in T. D. 50797, providing for a rate of duty of 10 per centum ad valorem on—

Men's, youths', and boys' boots, shoes, or other footwear (including athletic or sporting boots and shoes), made wholly or in chief value of leather, not specially provided for (except turn or turned, or sewed or stitched by the process or method known as McKay, or made by the process or method known as welt).

The merchandise the subject of these protests consists of certain men's leather hockey boots or shoes which were classified by the collector as boots, made wholly or in chief value of leather, not specially provided for, sewed or stitched by the process or method known as McKay, with consequent assessment of duty thereon at the rate of 30 per centum ad valorem under paragraph 1530 (e) of the Tariff Act of 1930, as modified by the Presidential proclamation, T. D. 45311, supra.

As originally drawn, each of the protests claimed that the merchandise is properly dutiable at the rate of 20 per centum ad valorem under the provisions of paragraph 1530 (e), supra, as unmodified, and by timely amendment each protest was amended by adding a claim for duty at the rate of 10 per centum ad valorem under the provisions of paragraph 1530 (e), as modified by the Mexican Trade Agreement, T. D. 50797, supra.

At the trial of the issue, the protests were abandoned as to item 557, and judgment dismissing the protests to that extent will issue accordingly. As to the remaining item involved, No. 550, there is before us in evidence as plaintiff's exhibit 1 the official sample taken from the importation involved in protest 116138–K, which consists of a man's hockey shoe or boot.

It is the contention of the plaintiff that such hockey boots are partly McKay-sewn and partly hand-sewn; that the hand-sewn part exceeds the McKay-sewn part in value, and that therefore the boots are not "sewed or stitched by the process or method known as McKay" within the meaning of those words as used in the Presidential proclamation, *supra*.

The sole witness called to testify was the appraiser at the port of Buffalo who stated that he had had occasion, both as an examiner of merchandise and as the appraiser of merchandise at that port, to pass officially upon shoes sewn by the McKay process or method and upon shoes sewn otherwise. He identified the McKay process or method as a process or method for sewing the sole to a shoe in a particular manner by machine which had been patented or brought about by a man named McKay.

The witness' testimony is to the effect that, starting at a point about 3 inches back from the toe on one side, and continuing around the side of the shoe, the heel, and the other side of the shoe to a point 3 inches from the toe, the sole was sewn to the upper by the McKay method of stitching, representing in all about 14 inches of stitching, and that the remaining part of the sole around the toe was hand-sewn, representing about 4½ inches of hand stitching. The witness was permitted, over the objection of counsel for the defendant, to testify that the hand sewing in the shoe was more valuable or expensive than the McKay sewing.

In support of its contention, plaintiff has cited as closely analogous to the present case the case of *United States* v. *Aris Gloves, Inc.*, 31 C. C. P. A. (Customs) 169, C. A. D. 268. The merchandise represented by exhibit 1 in that case consisted of a woman's leather glove, the fingers of which had been seamed by machine, but the side seams of which had been stitched by hand. It was assessed with duty by the collector under an amendment of paragraph 1532 (a) of the Tariff Act of 1930 contained in the French Trade Agreement, T. D. 48316, providing for hand-seamed gloves, and was claimed to be properly dutiable under the same provision, as amended by the Czechoslovakian Trade Agreement, T. D. 49458, as machine-seamed gloves.

In reaching its conclusion in that case the court held that in order for a glove to respond to the term "seamed by hand"—

* * * It therefore would be necessary * * * that all the seaming which is essential *to first make it a glove* be done by hand. [Italics quoted.]

and that the same principle would apply to a machine-seamed glove. Upon the facts in that case, it was held that the glove represented by exhibit 1 therein was neither a machine-seamed nor a hand-seamed glove and the court relegated it for tariff classification purposes to the provisions of paragraph 1532 (a), as unmodified, wherein the type of seaming was not the determinant of classification.

We agree that the analogy between the cited and the present cases is quite close, and we think that the reasoning applied in the *Aris Gloves, Inc.*, case has application here, consideration being given to the differences in facts.

In the *Aris Gloves, Inc.*, case the seaming involved was for the purpose of making material into a glove, and the court correctly observed that before a glove could be said to have been seamed either by hand or by machine, all the seaming which is *essential* to first make it a glove must be done by either method. In the present case, it is apparently undisputed that the McKay process or method is a method for sewing the sole to the shoe, or to the upper, and following the analogy of the *Aris Gloves, Inc.*, case it would appear that in order to be a shoe "sewed or stitched by the process or method known as McKay," all of the sewing or stitching which is essential to sewing the sole to the shoe must be done by the McKay process or method.

Where the present record fails is in establishing how much of the stitching performed on the shoe in question represented by exhibit 1 herein was essential to sewing the sole to the shoe. First thought might lead to the conclusion that each and every stitch by which the sole was sewed to the shoe would have to be done by the McKay method before it could be said that the shoes were "sewed or stitched by the process or method known as McKay." Reflection, however, reveals that such a conclusion might lead to absurd results. If we were to assume a situation in which all but a few stitches were performed by the McKay method and the remaining stitches by some other method, the application of the "every stitch" test would lead to a result that was manifestly not intended by the insertion in the tariff act of the provision for McKay-sewn shoes, in that shoes, to all practical purposes sewn by the McKay method, would be classified as not so sewn.

Apparently counsel for the plaintiff makes no such contention, for counsel argues that a comparison of the value or cost of each of the two types of sewing performed on the sole of the shoe is the test of whether it was sewed or stitched by the McKay process, or otherwise. Presumably, carrying counsel's argument to its logical conclusion, had the value, expense, or cost of the McKay sewing exceeded that of the hand sewing, the shoes would be admitted to have been "sewed or stitched by the process or method known as McKay," even though some portion of the sewing was not done by that method.

We therefore conclude that it is not necessary that every stitch by which the soles were sewed to the shoes must have been by the McKay method to bring the shoes under the provision for McKay-sewn shoes. What, then, shall be the test in cases where, as here, the shoes are only partly sewn by the McKay method?

Counsel for the plaintiff urges that the comparison of value between the McKay-sewn portion and the portion sewn otherwise is the test, and cites *United States* v. *Guy B. Barham Co.*, 26 C. C. P. A. (Customs) 83, T. D. 49614, and the cases cited therein, in support of this contention.

In the *Barham* case, the merchandise involved was spun yarn, consisting of 80 percent rayon and 20 percent cotton, plied, and the competition was between the provision in paragraph 1303 of the Tariff Act of 1930 for "Spun yarn of rayon * * * if plied," and the provision in paragraph 1312 of the same act for "Manufactures of filaments, fibers * * * in chief value of rayon." It was held that the provision in paragraph 1303 was limited to spun yarn which was wholly or substantially wholly composed of rayon, and since the spun yarn in question was composed in substantial portion of cotton, it was not provided for in the said paragraph 1303, and its classification was under the general provision in paragraph 1312 for manufactures of filaments and fibers composed wholly or in chief value of rayon. The decision in that case was arrived at upon a construction of the rayon and synthetic textiles schedule which involved an inquiry into the legislative history thereof and an examination into the context and scope of the particular provisions in question, and these considerations led to a result which would harmonize and give effect to apparently conflicting provisions. We do not believe that the rule of the *Barham* case itself is authority for the proposition for which it is here cited by the plaintiff.

During the course of its opinion, the court had occasion to state the so-called "chief value" rule, as follows:

It is well settled that the general rule is that when a tariff statute provides for "an article of specified material, without declaring to what extent it must be composed of that material, it is at least confined to merchandise of which the specified material is that of chief value or is the predominant one therein," and the words "composed of," "made of," and "kindred expressions" [*sic*] in tariff statutes may, according to the context, mean wholly or substantially wholly of a specified material, or wholly or in chief value of such material. *Vantine & Co.* v. *United States*, 3 Ct. Cust. Appls. 488, T. D. 33124; *Kenyon Co.* v. *United States*, 4 Ct. Cust. Appls. 344, T. D. 33529; *Blumenthal & Co. et al.* v. *United States*, 5 Ct. Cust. Appls. 327, T. D. 34529; *Steinhardt & Bro.* v. *United States*, 8 Ct. Cust. Appls. 372, T. D. 37629; *Simiansky & Co.* v. *United States*, 9 Ct. Cust. Appls. 288, T. D. 38224; *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 540, T. D. 39680; *United States* v. *Linen Thread Co.*, 13 Ct. Cust. Appls. 359, T. D. 41257.

Plaintiff, in effect, argues for an extension of the "chief value" rule into situations such as that in the case at bar where a tariff statute provides for an article when made in a certain way, i. e., boots or shoes when "sewed or stitched by the process or method known as McKay." However, the rule itself as stated above does not provide a solution to the situation before us. In essence, the rule is that a tariff classification by material refers to the component material of chief value, *or to the predominant material.* Even if it be assumed that the record establishes that the hand sewing on the shoes at bar exceeded in value the McKay process sewing, it clearly appears from an examination of the shoe, exhibit 1, that the McKay-sewn portion is the predominant one both in linear measurement of sewing and in area of the sole fastened to the upper thereby.

It is these latter factors which we think provide the key to the classification of the shoes before us. It is undisputed that the purpose of sewing or stitching by the McKay process or method is to attach the sole to the shoe, or to the upper. By far, the greater portion of the sole in exhibit 1 has been attached to the shoe by the McKay process or method, and if there had been no hand sewing on the remainder, it would still be recognized that the sole was substantially attached to the shoe. On the other hand, had only the hand-sewn portion of the sole been attached to the shoe, it could not be said that the sole had been substantially attached to the shoe, for about 70 percent of the area of the sole would be unattached.

As the purpose of sewing or stitching by the McKay process or method has been substantially carried out by the McKay sewing on the shoes at bar, we hold that they are within the description of shoes "sewed or stitched by the process or method known as McKay," and consequently dutiable under the provision therefor, as assessed by the collector.

Judgment will therefore issue dismissing the protests insofar as they relate to item 557, and overruling them as to all other claims and in all other respects.

### CONCURRING OPINION

COLE, Judge: This case was heard and submitted before a single member of this court on circuit under statutory authorization issued by the chief judge to hear or to hear and determine the case (28 U. S. C., 1946 ed., Supp. III, § 254).

My views set forth in *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 22 Cust. Ct. 158, C. D. 1175, questioning the jurisdiction of the division to decide a case similar to these proceedings, continue as the minority expression from the division. Under the practice and procedure of the court and the rules applicable thereto, much litigation

before the court is dependent upon my participation in a decision of the same. Adhering, however, to my views expressed in the *Bush* case, *supra*, but for the purpose of expediting the work of the court, I am joining my colleagues in the disposition of this case, and concur in the opinion and judgment attached thereto.