(C.D. 2581)

SHELBY WILLIAMS MFG., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 20, 1965)

*Barry Goodman* and *Schwartz & Lidstrom* (*Joseph Schwartz, Earl R. Lidstrom,* and *Barnes, Richardson & Colburn* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Morris Braverman,* trial attorney), for the defendant.

Before OLIVER, WILSON, and NICHOLS, Judges

NICHOLS, Judge: The merchandise involved in this case is described on the invoice as "Chair Frames model 6001 in the raw." It was imported from Poland and entered at the port of Chicago on May 15, 1961, as "Furniture, chair parts." It was assessed with duty at 25½ per centum ad valorem under paragraph 412 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as bent-wood furniture. It is claimed to be dutiable at 17 per centum ad valorem under said paragraph, as modified, as chairs or parts thereof, wholly or in chief value of wood, not specially provided for.

The pertinent provisions of the tariff act, as modified, are as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rates of Duty | | |
|---|---|---|---|---|
| | | A | B | C |
| 412 | Furniture, wholly or partly finished, and parts thereof, wholly or in chief value of wood, and not specially provided for: | | | |
| | Chairs_____ | * * * | * * * | 17% ad val. |
| * | *        *        * | * | * | * |
| | Parts of any of the foregoing_____ | * * * | * * * | 17% ad val. |
| * | *        *        * | * | * | * |
| | Bent-wood furniture, wholly or partly finished, and parts thereof_____ | * * * | * * * | 25½% ad val. |

At the trial, plaintiff called Manfred Steinfeld, executive vice president of Shelby Williams Mfg., Inc. The business of that firm is manufacturing and importing institutional seating, chairs primarily, and the witness' duties are concerned with production and sales. He was familiar with the imported merchandise, which he designed about 6 years ago, and then decided to import from European suppliers. He produced a sample, which was received in evidence as plaintiff's exhibit 1. It has a plywood back which is bandsawn, shaped, and attached to a bent-wood seat frame, and has four straight turn front legs. For the purposes of strength, an understructure, which is called a U stretcher, is attached to all four legs. The seat frame and the U stretcher consist of bent wood, but there are no other bent-wood parts. This merchandise is imported in knocked-down condition and is assembled by the importer. All of the imported parts are present in the sample; no bent-wood components were added in the course of assembly.

Mr. Steinfeld stated that he had been in the furniture business for 12 years and has become familiar with terms used in the trade through everyday exposure, manufacturing, contact in the industry, and general knowledge of institutional requirements for seating. He has sold furniture known as bent-wood furniture. He defined a bent-wood chair as one in which the back legs, the insert, the front legs, the stretcher, and even the arms are made of bent-wood parts. He produced a sample of such an article which was received in evidence as plaintiff's exhibit 2. The outside backpiece, including the back legs, is one continuous piece, steam bent to the desired form. There is also an insert backpiece which is steam bent. The seat frame, the front

legs, and the understretcher are steam bent. The one part that is not bent wood is the plywood insert panel in the seat. Bent wood, according to the witness, is made by taking a piece of soldered lumber, steaming it, and bending it into a desired form.

The witness testified that the purpose of the U stretcher in plaintiff's exhibit 1 is to reinforce all four legs and achieve greater strength in the chair itself. It is not added for attractiveness, but for strength and greater structural stability. In exhibit 2, where all the components are bent wood, the bent-wood stretcher seems to fit in more easily with the overall design.

Mr. Steinfeld stated that plaintiff's exhibit 2 is not the only type of chair known as a bent-wood chair; that there are other types. In his view, a bent-wood chair is one which has predominant features made of bent wood. Plaintiff's exhibit 1 is not a bent-wood chair, but if the back were made out of bent wood, he would consider it a bent-wood chair. He had never purchased or sold items like plaintiff's exhibit 1 as bent-wood furniture. He described it as reinforced with a bent stretcher.

The sole question here is whether chairs having two components of bent wood, the seat frame and the stretcher, are covered by the statutory provision for "bent-wood furniture."

In *Davies Turner & Co.* v. *United States*, 45 CCPA 39, C.A.D. 669, which involved the meaning of the provision for "bent-wood furniture," it was held that the term was limited to what was known as bent-wood furniture at the time of the passage of the Tariff Act of 1930, i.e., wood bent by steam or hot water, excluding wood furniture bent by other means not known in 1930. In the course of the opinion, the court stated (pages 42–43) :

While some of the definitions prevailing in 1930 contain broad language, it seems clear that paragraph 412 was not intended to include *all furniture* which contained any piece of wood which had been bent in any manner. Thus paragraph 405 of the 1930 Act provides for furniture in chief value of willow and, as pointed out by the Customs Court in *Transatlantic Shipping Co.* v. *United States*, 63 Treas. Dec. 1067, T.D. 46460, it would appear that provision would be practically meaningless if "bent-wood" furniture should be construed as including, without limitation, all furniture having any part made of wood which has been bent in any manner, since willow furniture "must, of necessity, have had certain of its parts bent."

Moreover, it would seem reasonable to suppose that Congress, by employing a hyphen in the term "bent-wood," must have intended to restrict the meaning of that term to the type of furniture known by that name at that particular time, rather than to broaden it to include all types of furniture which contained wood that was literally bent. [Emphasis quoted.]

The provision for bent-wood furniture was first inserted in the Tariff Act of 1930. At the time of its enactment, the Tariff Commission had in progress an investigation, which had commenced in

1923, of the cost of production of bent-wood chairs for the purpose of determining what import tax should be imposed on them. (Summary of Tariff Information, 1929, page 959; Hearings before the Committee on Ways and Means of the House of Representatives, Tariff Readjustment, 1929, volume IV, pages 2808–2809; Hearings before a Subcommittee of the Committee on Finance, United States Senate, volume IV, page 398.) A public hearing was held in 1927 and a preliminary statement was issued in May of that year. That statement contained the following definition:

A bent-wood chair may be defined as a chair of which each of the principal sections of the frame is bent to its ultimate form from a single piece of wood instead of being fabricated from several pieces and cut and fitted together.

Testifying before the House Ways and Means Committee, Senator McCumber stated that there were a thousand different styles of bent-wood chairs and that the above definition limited the investigators to only the cheapest class. He added that there was another definition in the trade which covered everything in the line of bent-wood chairs, which read:

A wooden chair the principal parts of which are of bent wood or where bent-wood parts are the predominant parts in the construction of the chair.

At the Senate Subcommittee hearings, Senator McCumber stated further (hearings, volume IV, page 391):

Take one of these chairs that has just been shown here. For instance, it consists of the back, and if the back and legs were composed of two pieces of bent wood mitered together at the top, although every stick in that chair was of bent wood, it would not be considered a bent-wood chair under that investigation because it did not correspond with that definition. Mr. Weisbach, counsel of the Great Northern Chair Co., although I am not certain who gave a very fair definition, gave his definition, and he said: "Our definition"—speaking for the domestic manufacturers—"Our definition of a bent-wood chair is a wooden chair the framework of which is constructed principally of bent-wood parts; that is, a chair in which bent-wood parts predominate."

That is a clean cut and a fair definition of a bent-wood chair and is given by the counsel of the domestic manufacturers; see his brief, page 3.

Now, the importers agreed to that. * * *

In a brief, filed with the Senate Subcommittee on behalf of Heywood-Wakefield Co., domestic manufacturer, it is stated (hearings, volume IV, page 318):

Bent-wood chairs are well known in the trade throughout the United States, as a chair whose entire frame is made of bended wood, is finished in its natural state with varnish or lacquer and is not covered with any other material.

In a brief filed on behalf of Thonet Brothers (Inc.) and others before the Senate Subcommittee, it is stated that the cheap grade of chair includes seven or eight groups which would fall within the Tariff Com-

mission definition, but that when the Commission realized that the definition excluded 60 to 70 percent of the importations and a larger portion of the domestic production, it modified it. (Hearings before Senate Subcommittee, volume IV, page 402.)

The modified definition is apparently that found in the Summary of Tariff Information, 1929, page 958:

Bent-wood chairs are chairs made of wood that has been bent to shape. They are used in halls, theaters, schools, offices, restaurants, and similar places when strong, lightweight chairs are desired. In the more fancy styles they are used for house-hold purposes.

Subsequent publications of the Tariff Commission state:

Bent wood furniture used in the United States consists chiefly of chairs for use in restaurants, offices, and other public places where strong and lightweight equipment is desired. It is customarily made in several types of chairs, of oak, elm, birch, or beech wood, which is bent to form the back bow, seat rail, and other essential parts. [Digest of Trade Data, trade agreement with Mexico, page 285.]

Bent wood furniture consists principally of lightweight chairs of which the component sections are made of wood bent to shape rather than of sawed pieces commonly used in the conventional or cut-wood type of furniture. The chairs are made in a wide range of styles comprising two general classes, namely, staple chairs of simple construction and relatively low price, and better or more elaborate chairs of medium and high prices. [Summaries of Tariff Information, 1948. volume 4, page 87.]

"It is well settled that the general rule is that when a tariff statute provides for 'an article of specified material, without declaring to what extent it must be composed of that material, it is at least confined to merchandise of which the specified material is that of chief value or is the predominant one therein,' and the words 'composed of,' 'made of,' and 'kindred expressions' in tariff statutes may, according to the context, mean wholly or substantially wholly of a specified material, or wholly or in chief value of such material." *United States* v. *Guy B. Barham Co., for University Shoppe,* 26 CCPA 83, 84, T.D. 49614, and cases cited. While component material of chief value is the determining factor in most cases, in *Blumenthal & Co. et al.* v. *United States,* 5 Ct. Cust. Appls. 327, 330, T.D. 34529, it was stated:

We are not disposed here to say that a case may not again arise relating to an article *eo nomine* referred to in a tariff statute in which it may not be held that its classification is to be determined by the predominant material rather than the component material of chief value. To warrant that holding, however, we think it must at least appear that such predominant material, though not the component of chief value, nevertheless gives to the article its name, form, and shape, and determines its character and use, and that in addition it should clearly appear that in the common understanding the *eo nomine* statutory description included the article under consideration without regard to its component material of chief value.

The Congress, before 1930, made no provision *eo nomine* for bent-wood furniture and it was dutiable under paragraph 410 of the 1922 act as "house or cabinet furniture" or as "manufactures of wood or bark." The 1930 act carved bent-wood furniture out of a previously undifferentiated mass, a situation normally requiring strict construction. *Goat and Sheepskin Import Co. et al.* v. *United States*, 5 Ct. Cust. Appls. 178, 180, T.D. 34254; *Joleo Impex Co.* v. *United States*, 45 Cust. Ct. 6, 10, C.D. 2189. In view of this, and in view of the decision of our appellate court in *Davies Turner & Co.* v. *United States*, *supra*, we do not think we should extend the meaning of the term "bent-wood furniture" beyond what was clearly stated in the definitions which were before the Congress in 1929–30. Some of these definitions required that all the principal parts be of bended wood and the most liberal one prescribed that bent-wood parts must be the "predominant parts." We conclude that it would not be sufficient if the bent-wood parts were in chief value, unless they were also "predominant." What was understandable in 1930 by the word "predominant" appears in *Blumenthal & Co. et al.*, *supra*, at page 330. We do not think the bent wood on exhibit 1 is "predominant" in the tariff sense of that word. In order that our decision may not be misunderstood, we add that although the plywood back of exhibit 1 appears to be bent, the Government did not contend it was bent wood and the witness clearly assumed it was not. It was not made by the process referred to in the *Davies Turner* case, *supra*, and thus, whether bent or not, was not bent wood within the meaning of the Tariff Act of 1930. Accordingly, we did not count the back in determining whether the bent wood was predominant.

The practice of customs officers since 1930 has not been placed before us, and we are not informed how chairs in part of bent wood have been classified. The Government's brief does not expressly state what test it considers controlling but it seems to concede, at least *arguendo*, that, for classification as bent-wood furniture, the bent-wood portions must be predominant. It argues that the "admitted presence of bent-wood in two of the predominantly essential parts of the chair at bar, the seat frame and the U stretcher, added only to give strength to the chair, establishes that the article is one of the 1,000 different styles of bent-wood chairs commonly known as such at or about the date of the passage of the Tariff Act of 1930." This statement lacks support in the evidence insofar as the only witness, Mr. Steinfeld, testified that he had designed the chair himself, 6 years before, from which the natural inference is that it is of a new style, not in use in 1930. Examination of exhibit 1 indicates that all parts of the article are "predominantly essential," inasmuch as it could not function as a chair, lacking any of them. Of eight wooden or plywood parts, two only are bent wood. These two parts in no way control the design. A closely

similar chair could be made without any bent wood. In the illustrative exhibit of an admitted bent-wood chair, exhibit 2, the bent wood dictates a design peculiar to such chairs, which would seem impracticable to duplicate in other materials. Thus, the assertion that the bent-wood parts are "predominantly essential" fails to make them so. We can take judicial notice that exhibit 2 was a style of which countless exemplars existed in 1930. What the other 999 styles were like has not been put before us, but if any of them were like exhibit 1, the merchandise at bar, we doubt if the witnesses at the congressional hearings could have assumed, as they apparently did, that anyone could distinguish a bent-wood chair. Thus, Senator McCumber (referring to a Tariff Commission report, apparently) :

> * * * Look over the next page and see if any one of you could say this is a bent-wood chair and this is not a bent-wood chair, or any of these, 111 of them, and they are in the order of the gradual increases in price. All of them are bent-wood chairs, sold as bent-wood chairs, understood commercially to be bent-wood chairs. Some of them have little inserts in the back like this, that are not bent wood, and those have legs, both front and hind legs of bent wood * * *. [Senate Hearings, cit., supra, page 394.]

The inference seems irresistible that none of these 111 chairs or 1,000 chairs were as different from exhibit 2 as exhibit 1 is. There is no evidence that anything of its style was known in 1930, or if known at all, was known as a bent-wood chair, and the legislative history indicates that articles then known as bent-wood chairs were significantly different from exhibit 1.

It follows that the merchandise herein is not properly classifiable as bent-wood furniture, but is subject to duty at 17 per centum ad valorem under paragraph 412, as modified, as chairs or parts thereof, wholly or in chief value of wood, not specially provided for.

The protest is sustained and judgment will be rendered for the plaintiff.