(C.D. 2426)

Hoyt, Shepston & Sciaroni  
S. Blondheim & Co.  } *v.* United States

United States Customs Court, Third Division

(Decided January 13, 1964)

*Glad & Tuttle (George R. Tuttle, Jr.,* of counsel) for the plaintiffs.
*John W. Douglas,* Assistant Attorney General (*Harold L. Grossman,* trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: The issue here is the same as the issue which was before the court in *S. Blondheim & Co. et al.* v. *United States,* 49 Cust. Ct. 8, C.D. 2352, there decided adversely to plaintiff's claim. The merchandise is the same. The record before us is somewhat different.

The question is whether sausage casings, made of an outer casing of natural hog bung lined with viscon, a synthetic material, are or are not the sausage casings for which Congress made *eo nomine* free entry provision, paragraph 1755, Tariff Act of 1930. In the earlier *Blondheim* case, we held that plaintiff had not shown that these are natural sausage casings, such as Congress intended in the paragraph 1755 free entry provision.

It is conceded that these are sausage casings, that they are sewn, and that each casing consists of a hog bung (natural) outer casing with a lining of viscon (synthetic).

The record in the earlier case has been incorporated in the record here. (R. 6.) There are several newly introduced exhibits.

Plaintiff adduced on trial the testimony of Mr. Charles J. Hoerner, who had testified in the prior litigation. In his testimony in that case, Mr. Hoerner identified himself as vice president, in charge of sales, of the plaintiff firm.

Plaintiff also adduced in this case the testimony of Mr. Robert M. Levaco, who identified himself as a long-time associate of Oppenheimer

Casing Co., currently located in the San Francisco office as manager in charge of its operations on the west coast and in the far Western States.

The newly adduced evidence is intended, according to the statement of plaintiff's counsel, to clarify certain of Mr. Hoerner's testimony at the prior trial, chiefly with respect to the "functions" of the natural casing and of the synthetic lining in the merchandise of this litigation.

Mr. Hoerner testified as to various types of sausage casings, including those sewn and those unsewn, those lined, those unlined, and also as to casings that are lined with a natural animal substance and those that are lined with synthetic material, such as the casings of this litigation. There also are casings that are made wholly of synthetic material.

Plaintiff urges, in its argument, that the synthetic lining of these sausage casings is a minor feature; that these casings, so lined, are equally as "efficient" as are natural casings, either with or without liners; that they are bought and sold as sewed natural sausage casings; that they possess all of the physical characteristics of natural sausage casings and are almost indistinguishable from those natural sausage casings which have a natural liner.

To the extent that plaintiff's argument and testimony, as to the functions of the viscon lining used in conjunction with the natural outer casing, seem to relate to classification according to use, they are irrelevant to the issue before us. It may be that, in recounting the facts of record in the earlier case, we misled counsel when we summarized the testimony that had been adduced by plaintiff. This included evidence as to "purpose" of the viscon lining. Our decision did not rest either on function of that lining, or on its efficiency in use, in comparison with the function or efficiency of casings made wholly of natural materials.

The fact that casings are used as sausage casings is, of course, not the sole determining fact under paragraph 1755. If it were, even those sausage casings that are made wholly of artificial materials would be so classified. Our appeals court has held that they are not so classified. *Brecht Corp.* v. *United States*, 25 CCPA 9, T.D. 48977.

In construing an *eo nomine* enumeration, it is the meaning of the term in 1930 that prevails. *Davies Turner & Co.* v. *United States*, 45 CCPA 39, C.A.D. 669. This rule is distinct from the rule which plaintiff here asserts, namely, that an *eo nomine* provision embraces also merchandise which was not known to commerce at the time of enactment. The two principles of customs law were aptly and succinctly stated by Judge Worley, speaking for a unanimous court, as follows:

This case involves two well-established principles of customs law, one, that the meaning of an *eo nomine* designation in a tariff act must be determined as of

the date of enactment of the act, *Smillie & Co.* v. *United States*, 12 Ct. Cust. Appls. 365, T.D. 40520; *United States* v. *O. Brager-Larsen*, 36 C.C.P.A. (Customs) 1, C.A.D. 388, and cases there cited; the other, that tariff acts are made for the future as well as the present, and will embrace merchandise which was not known to commerce at the time of their enactment. *United States* v. *Paul J. Downing et al.*, 16 Ct. Cust. Appls. 556, T.D. 43294; *Newman* v. *Arthur*, 109 U.S. 132, 27 L. Ed. 883. [*Davies, Turner & Co., supra*, at p. 41.]

Discussing the relation of these two principles, Judge Worley pointed out that the meaning of an *eo nomine* provision is determined as of the date of enactment and, when meaning has been so determined, that meaning will embrace subsequently created articles which fall within it. Quoting from *Smillie & Co., supra*, the judge emphasized that, as to articles not known at the time of enactment but which come into being later, the statute will be held to apply if the article possesses an essential resemblance to the ones named in the statute *in those particulars which the statute establishes as the criteria of classification.*

Plaintiff concedes that sausage casings made of a natural outer casing with a viscon, or synthetic, lining were not known in 1930, when the Tariff Act of 1930 was enacted. (Plaintiff brief, p. 11.)

Sausage casings made of artificial materials were known in 1930, and prior thereto. The casings of *J. E. Bernard & Co.* v. *United States*, 17 CCPA 398, T.D. 43834, were made of parchment paper. They were entered under the Tariff Act of 1922.

We do not understand that plaintiff argues a commercial meaning for sausage casings. Indeed, plaintiff's argument is predicated on the 1930 common meaning, extended to include casings that were not then known.

Webster's New International Dictionary, second edition, does not define the term "sausage casing," but does so indirectly in definitions of "sausage" and of "frankfurter," as follows:

sausage, * * * Meat (esp. pork) minced and highly seasoned and commonly forced into a *tubular case made of the prepared intestine of some animal,* which is tied shut, usually at short intervals to form a string of plump cylindrical sections with rounded ends; also, one of these sections. [Emphasis supplied.]

frankfurter, * * * A highly seasoned beef and pork sausage *stuffed in sheep casings,* linked, and smoked. [Emphasis supplied.]

Liverwurst, an article of food identified in the record as one in the making of which these casings are used, is defined as a "sausage containing a large proportion of liver."

Plaintiff's witness, Mr. Charles J. Hoerner, stated his understanding of what a sausage casing is, as follows:

Q. Would you define, or would you state your understanding of the word [*sic*] sausage casing?—A. Well, a sausage casing is an animal casing that is used as a sausage container.

Q. Has it been prepared and cleaned?—A. Yes.

Q. Does that definition encompass Plaintiff's Exhibit 1?—A. Well, yes. [Incorporated record, R. 28, 29.]

For whatever probative value there may be in Mr. Hoerner's "understanding," as bearing on our finding of the 1930 common meaning of the term "sausage casing," he appears to be in agreement with the dictionary sense, save as he enlarged his understanding to encompass ("well, yes") the merchandise of this appeal, which concededly is not such merchandise as he had just described.

Applying the rule in the case of *Davies Turner & Co., supra*, we find that the 1930 common meaning of the *eo nomine* provision of paragraph 1755, for sausage casings, was that such casings are those made wholly of animal products. Prior construction had disassociated from that provision such casings as were made wholly of artificial products; and casings made in part of natural products and in part of synthetic materials were then unknown.

Turning now to the second principle of *Davies Turner, supra*, the question we are called upon to decide is whether these sausage casings possess essential resemblance to the criteria for classification of natural sausage casings under paragraph 1755.

The statutory provision itself is our first consideration. It reads as follows:

PAR. 1755. Sausage casings, weasands, intestines, bladders, tendons, and integuments, not specially provided for. [19 U.S.C., § 1201.]

The history of this enactment was reviewed by our appeals court in the *Brecht* case, *supra*, and from that opinion we quoted in the prior *Blondheim* case. In view of the extent to which plaintiff's brief challenges the philosophy and logical reasoning of the appeals court in the *Brecht* case, we quote here more extensively from the pertinent opinion language:

* * * we here give consideration to certain facts and circumstances, which, we think, when considered as a whole, suggest the sense in which Congress used the term "sausage casings."

For approximately half a century prior to the passage of the Tariff Act of 1922, animal intestine sausage casings were admitted free of duty under provisions which were, without material change, repeated in the various tariff acts and covered bladders, integuments, intestines of animals, etc. (sausage casings were not named). In the Tariff Act of 1922 we find for the first time that provision was made in paragraph 1655 (free list) for "sausage casings." The paragraph was identical with paragraph 1755 now under consideration and read:

PAR. 1655. Sausage casings, weasands, intestines, bladders, tendons, and integuments, not specially provided for.

The legislative history concerning this particular paragraph is of special importance here. In the Summary of Tariff Information, 1921, at page 646, which was before Congress when the Tariff Act of 1922 was being prepared, attention was called to the fact that "Sausage casings come within paragraph 419 above [tariff act of 1913]." Paragraph 419 was the provision for "bladders,

and all integuments, tendons and intestines of animals [etc.]." After the bill was prepared and passed the House of Representatives, the provision for "Sausage casings, weasands, intestines, bladders, tendons and integuments, not specially provided for" was inserted into paragraph 706 along with "meats, fresh, prepared, or preserved, not specially provided for" and all made dutiable at 15 per centum ad valorem. After setting this paragraph out and comparing it with certain provisions in former acts, the following statement was made by the Tariff Commission:

SAUSAGE CASINGS, ETC., AND MEATS PREPARED OR PRESERVED N.S.P.F.

*Description and use.*—Under this head fall pickled and cured beef, pickled pork, canned meats, sausage, sausage casings, scrapple, head cheese, livers, sweetbreads, etc. Beef that is dried, salted, or pickled has lost its former prominent position in trade in favor of chilled and frozen beef; pork is, however, most in demand when it is salted, pickled, cured, or otherwise preserved. Canned meats, of which there are many varieties, are increasing in commercial importance.

Statistics concerning the quantity and value of "Sausage casings—intestines, etc." were then given and under "*Suggested changes*" the following appears:

*Suggested changes.*—To maintain the general plan of the rearrangement of the Agricultural Schedule, sausage casings, weasands, intestines, etc., might be provided for in a paragraph separate from meats n.s.p.f.

When the bill got to the Senate Committee on Finance, certain interested parties appeared and there protested against the removal of animal sausage casings from the free list. (See *American Net & Twine Co.* v. *Worthington*, 141 U.S. 468; *United States* v. *Stone & Downer Co. et al.*, 274 U.S. 225.) By amendment proposed in the Committee on Finance of the Senate, the first part of paragraph 706 as it appeared in the House bill relating to "Sausage casings, weasands, intestines, [etc.]" was taken out of the paragraph and was placed in the free list as a separate paragraph. The following appears in Volume 62, pt. 9, p. 9568 of the Congressional Record:

MR. MCCUMBER. Mr. President, I will merely say that the "sausage casings, weasands, intestines, bladders, tendons and integuments, not specially provided for," and here proposed to be stricken out by the committee amendment, have been transferred to paragraph 1644a on the free list. [Which became paragraph 1655.]

The Congressional Record shows no further discussion of the subject matter in either branch of Congress, and the reports of the committees having the bill in charge contain nothing of importance here.

The settled policy of Congress to free list sausage casings made from animal intestines and to make no free provision for artificial sausage casings must have been well understood by Congress at the time the Tariff Act of 1930 was being prepared. This court prior to the passage of the Tariff Act of 1930 had held that artificial sausage casings were dutiable. Before Congress at the time of preparing the 1930 act was the Summary of Tariff Information, 1929. At page 2543, the Tariff Commission set out paragraph 1655 (which became paragraph 1755) and the following was said concerning it:

SAUSAGE CASINGS AND TENDONS

*Description and uses.*—Small and large intestines, weasands (trachea or windpipe), bladders, and bungs, are used chiefly for sausage casings, and in the making of "catgut." Inferior and broken gut are used in tallow

production, tankage, and fertilizer. There is some use of tendons as glue stock.

*Production.* The production of sausage casings, etc., is not reported separately.

*Imports.* Imports come mostly from China, Argentina, Australia, and Canada; but small casings, *usually dried*, are received from various sources. * * *. [Italics ours.]

Following these data, statistics concerning imported sausage casings such as "sheep, lamb, and goat casings," are given.

In the Dictionary of Tariff Information, prepared by the United States Tariff Commission and published in 1924, appears the following:

SAUSAGE CASINGS, ETC., AND MEATS PREPARED OR PRESERVED N.S.P.F., include pickled and cured beef, pickled pork, canned meats, sausage, sausage casings, scrapple, head cheese, livers, sweetbreads, etc. * * *

* * * In 1921 * * * 102,281,000 pounds of sausage casings were produced in packing houses.

Nowhere in any of the reports of the committees or in any other matter relating to the legislative history of the provisions is there any suggestion that the term "Sausage casings" was meant to cover artificial sausage casings.

From the foregoing facts, it seems reasonable to conclude that when Congress took the provision for sausage casings out of the dutiable meat provision and placed it in the free list with a separate provision for other animal parts, it had in mind only such sausage casings as that term in its common meaning embraced. Since the identical provision was reenacted in the Tariff Act of 1930, unquestionably the term in that act was used in the same sense in which it was used in the Tariff Act of 1922. If Congress had intended in the Tariff Act of 1922 or in the Tariff Act of 1930 to include in the controverted free list paragraph artificial sausage casings, it seems to us that it would have used appropriate language to have accomplished its purpose.

Moreover, we think the rule of *noscitur a sociis* applies here. Like other rules of construction, it too has its limitations. It has often been applied with controlling effect and in some instances this court has, notwithstanding the applicability of the rule, refused to give it controlling effect in arriving at congressional intent. See *United States* v. *R. F. Downing & Co.*, 17 C.C.P.A. (Customs) 194, T.D. 43645. A consideration of the context of paragraph 1755 suggests the propriety of making application of the rule here. Moreover, the effect of the application of the rule harmonizes with our view of the intent suggested by the legislative history and the extrinsic facts to which we have hereinbefore made reference. In the paragraph along with sausage casings are weasands, intestines, bladders, tendons, and integuments, all old tariff terms relating to certain well-known animal organs or parts. It is well understood that artificial sausage casings may be made by a number of different processes from several kinds of raw materials. In view of all the above-stated considerations, it seems to us that we would not be warranted in holding that when Congress used the term "Sausage casings" in paragraph 1755, it meant to include artificial casings. [Pp. 13, 14, 15, 16.] [Italics quoted.]

We accept this as a statement of the particulars that were established by Congress as the statutory criteria of the sausage casings free listed in paragraph 1755, namely, that they are sausage casings made of weasands, intestines, bladders, tendons, or integuments, all of these

being old tariff terms, as our appeals court said, relating to well-known animal organs or parts. Under the circumstances, it seems to us that we would not be warranted in holding that when Congress used the term "sausage casings" in paragraph 1755, it meant to include therein, as free listed, casings which are made from different kinds of materials, and not just from the enumerated animal materials. In our opinion, the casings of this litigation, made with an outer casing of hog bung and a lining of viscon, do not substantially resemble natural sausage casings in the criteria established in paragraph 1755.

These sausage casings were properly classified under paragraph 1558 as a nonenumerated article, not specially provided for.

The protest is overruled. Judgment will enter accordingly.