HOYT, SHEPSTON & SCIARONI, S. BLONDHEIM & CO. v. UNITED STATES (No. 5167)*

United States Court of Customs and Patent Appeals, June 24, 1965

*Glad & Tuttle* (*Edward N. Glad, George R. Tuttle,* of counsel) for appellants. *John W. Douglas,* Assistant Attorney General, *Alan S. Rosenthal, Edward J. Berlin,* for the United States.

[Oral argument April 6, 1965 by Mr. Glad and Mr. Berlin]

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Jr., Associate Judges

*C.A.D. 865.

SMITH, Judge, delivered the opinion of the court:

 The merchandise involved in this appeal, sausage casings comprising outer casings of hog bung lined with viscon, a synthetic material, was classified by the collector as nonenumerated manufactured articles, dutiable at 10 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, as modified. The importer appeals from the decision and judgment of the Customs Court (52 Cust. Ct. 7, C.D. 2426) overruling its protest seeking classification as sausage casings under paragraph 1755 of the Tariff Act of 1930, a duty-free provision.

The issue as here presented is whether the importations are sausage casings within the provisions of said paragraph 1755, which reads as follows:

Par. 1755. Sausage casings, weasands, intestines, bladders, tendons, and integuments, not specially provided for.

The same issue, involving merchandise of the same description, was before the Customs Court in *S. Blondheim & Co.* v. *United States*, 49 Cust. Ct. 8, C.D. 2352, and was decided contrary to appellants' claim. In that earlier case, the importer introduced the testimony of one witness along with certain exhibits. That evidence has been incorporated in the record here. The record also includes additional testimony of the aforementioned witness along with testimony of another witness and some new exhibits.

There is no controversy as to the pertinent facts shown by the record. Thus, the imported sausage casings are used as the casing for liverwurst. Hog bungs in their natural state have been used for that purpose, but, because the casings should be at least 30 inches in length and from 2 to 3 inches in diameter to be commercially acceptable, bungs from small hogs are unsuitable in their natural state. However, small bungs may be utilized in a process which involves splitting the bungs and sewing several strips of bung together to achieve casings of the desired uniform size. Since such splitting and sewings results in a weak construction, a liner is employed to reinforce or strengthen the sewn bung. Beef middle, also a natural animal substance, is one material used as the liner. However, the limited supply of beef middle resulted in the development of the viscon liner of the importations as a substitute. The viscon liner is a synthetic manufactured product which simulates the beef middle liner in the latter's essential characteristics and has largely replaced beef middle as hog bung lining.

Two decisions of this court which were cited by the Customs Court are particularly pertinent to the present issue. They are *J. E. Bernard & Co.* v. *United States*, 17 CCPA 398, T.D. 43834, and *Brecht Corp.* v. *United States*, 25 CCPA 9, T.D. 48977. The *Bernard* case held that articles made of vegetable parchment paper and known as "parchment sausage casings" did not come within the term "sausage

casings" under paragraph 1655 of the Tariff Act of 1922, which paragraph is identical with paragraph 1755 of the 1930 Act. The court there stated:

> The term "sausage casings" is defined in Funk & Wagnalls New Standard Dictionary as follows:
>
>> Sausage-casing, n. Any of the various forms of cleaned and prepared entrails of cattle, swine, or sheep, used to hold sausage-meat, and named for the part used.
>
> It will be observed that the above definition limits the term "sausage casings" to cleaned and prepared entrails of animals. We have been unable to find any definition of the term which would include sausage casings made of other materials, * * *

In the *Brecht* case, merchandise invoiced as "sausage casings" and made of an artificial material called "hide split," was held not classifiable as "sausage casings" under paragraph 1755. In reaching that decision, the court made a detailed study of the legislative history of the paragraph, particularly with regard to its introduction into the tariff law as paragraph 1655 of the 1922 Act.

Appellants acknowledge those decisions but state that they "do not hold that paragraph 1755 or its predecessor paragraph was limited to sausage casings made *wholly* of natural entrails." They also cite several decisions as supporting their position that the imported casings here fall within the provisions of paragraph 1755 despite the fact that the hog bung therein is split and sewn and an artificial lining is added. The decisions emphasized by appellants, and apparently exemplary of the group, are *Klipstein & Co.* v. *United States*, 4 Ct. Cust. App. 510, T.D. 33936 and *Anderson Organization* v. *United States*, 46 CCPA 47, C.A.D. 694. In the former, the court ruled that a provision in the tariff act of 1909 for "indigo extracts or pastes" included synthetically produced indigo as well as indigo of vegetable origin. In the *Anderson* case, the court ruled that beef in cans containing 7 to 23 percent gravy was dutiable as prepared "meats" under paragraph 706 of the 1930 Act.

Although sausage casings made of artificial materials were known in 1930, as evidenced by the *Bernard* case, it is apparent from the record that sausage casings made of a natural outer casing with a viscon, or synthetic, lining were not so known. In fact, the Customs Court notes that appellants have conceded that casings of the latter type were not known.

The interpretation of an eo nomine designation with reference to merchandise not known to commerce at the time of enactment was discussed in *Davies Turner & Co.* v. *United States*, 45 CCPA 39, C.A.D. 669. The court there stated:

> * * * The meaning of *eo nomine* provisions is to be determined as of the date of enactment but, when so determined, that meaning will embrace all subsequently

created articles which fall within it. Tariff acts, therefore, are made for the future in the sense that they embrace articles not in existence at the time of enactment, but the meaning of words used in such acts is fixed at the time of enactment and does not fluctuate as the meaning of words might subsequently vary.

It further quoted with approval from *Smillie & Co.* v. *United States*, 12 Ct. Cust. App. 365, T.D. 40520, as follows:

■ This rule [that the meaning of an *eo nomine* provision of a tariff act is that which it has at the time of enactment] of course, does not operate to exclude articles which are not known at the time of the passage of the act, but which come into being later. *As to all such articles the statute will be held to apply, if the articles possess an essential resemblance to the ones named in the statute in those particulars which the statute established as the criteria of the classification.* [Emphasis added.]

We think those principles are determinative of the issue here and require the conclusion that the meaning of the term "sausage casings" in paragraph 1755 is such as to exclude the instant importations. Since the controlling factor is the meaning of a particular term totally different from the terms involved in the cases relied on by appellants, our conclusion clearly is not contrary to the aforementioned cases cited by them. In fact, the *Klipstein* case, like *Davies Turner*, involved consideration of whether "the new article possessed an essential resemblance to the former one in those particulars which the statute established as the criteria of the classification."

The 1930 meaning of "sausage casings" clearly required that the casing be made of animal organs or parts. Thus, the Customs Court observed:

Webster's New International Dictionary, second edition, does not define the term "sausage casing," but does so indirectly in definitions of "sausage" and of "frankfurter," as follows:

SAUSAGE, * * * Meat (esp. pork) minced and highly seasoned and commonly formed into a *tubular case made of the prepared intestine of some animal* which is tied shut, usually at short intervals to form a string of plump cylindrical sections with rounded ends; also, one of those sections. [Emphasis supplied.]

FRANKFURTER, * * * A highly seasoned beef and pork sausage *stuffed in sheep casings*, linked, and smoked. [Emphasis supplied.]

Liverwurst, an article of food identified in the record as one in the making of which these casings are used, is defined as a "sausage containing a large proportion of liver."

Plaintiff's witness, Mr. Charles J. Hoerner, stated his understanding of what a sausage casing is, as follows:

Q. Would you define, or would you state your understanding of the word sausage casing? A. Well, a sausage casing is an animal casing that is used as a sausage container.

Q. Has it been prepared and cleaned?—A. Yes.

Q. Does that definition encompass Plaintiff's Exhibit 1?—A. Well, yes. * * *

For whatever probative value there may be in Mr. Hoerner's "understanding," as bearing on our finding of the 1930 common meaning of the terms "sausage casing," he appears to be in agreement with the dictionary sense, save as he enlarged his understanding to encompass ("well, yes") the merchandise of this appeal, which concededly is not such merchandise as he had just described.

Even more significant are the holdings in the *Bernard* and *Brecht* cases, supra.

In *Brecht*, the court found the legislative history of the 1922 Act to show that "sausage casings, weasands, intestines, bladders, tendons and integuments, not specially provided for," were transferred to a duty free classification from a proposed dutiable classification during consideration of the act by Congress. In that connection, the court observed that for "approximately half a century prior to the passage of the Tariff Act of 1922, animal intestine sausage casings were admitted free of duty under provisions which were, without material change, repeated in the various tariff acts and covered bladders, integuments, intestines of animals, etc." It noted that the identical duty free provision of the 1922 Act which resulted from the transfer was reenacted in the 1930 Act. The court concluded as follows in *Brecht:*

Moreover, we think the rule of *noscitur a sociis* applies here. Like other rules of construction, it too has its limitations. It has often been applied with controlling effect and in some instances this court has, notwithstanding the applicability of the rule, refused to give it controlling effect in arriving at congressional intent. See *United States* v. *R. F. Downing & Co.*, 19 C.C.P.A. (Customs) 194, T.D. 43645. A consideration of the context of paragraph 1755 suggests the propriety of making application of the rule here. Moreover, the effect of the application of the rule harmonizes with our view of the intent suggested by the legislative history and the extrinsic facts to which we have hereinbefore made reference. In the paragraph along with sausage casings are weasands, intestines, bladders, tendons, and integuments, all old tariff terms relating to certain well-known animal organs or parts. It is well understood that artificial sausage casings may be made by a number of different processes from several kinds of raw materials. In view of all the above-stated considerations, it seems to us that we would not be warranted in holding that when Congress used the term "Sausage casings" in paragraph 1755, it meant to include artificial casings.

It is considered conclusive from the foregoing that being an animal organ or part, as are weasands, intestines, bladders, tendons and integuments, is an essential requirement for sausage casings to fall within paragraph 1755 and be duty free. Since the importations here include linings of artificial material, they constitute more than natural sausage casings falling under paragraph 1755 and do not resemble such natural sausage casings as to the criteria for their classification. We are convinced therefore that the Customs Court did not err in overruling appellants' protest.

The judgment is *affirmed.*